TERRAYNE O'BRIEN, a minor, SHERMAN O'BRIEN, a minor, MARLYS O'BRIEN, a minor, by their guardian ad litem, LOLA O'BRIEN, and LOLA O'BRIEN, Plaintiffs and Respondents, v. GREAT NORTHERN RAILWAY COMPANY, a Corporation, JOHN S. JOHNSON, and GEORGE M. D'HOOGE, Defendants and Appellants.

No. 10612
Submitted April 7, 1964. Decided January 25, 1965.
Rehearing Denied February 17, 1965.
400 P.2d 634.

14

Edwin Booth (argued), Cordell Johnson (argued), Helena, Harry L. Burns, Chinook, for appellants.

Baxter Larson (argued), Wolf Point, Oscar Hendrickson (argued), D. J. Sias, Chinook, for respondents.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a verdict and judgment rendered in favor of the plaintiffs in an action to recover damages as a result of the death of the plaintiffs' decedent, Eugene J. O'Brien, in a collision between a Great Northern Railway engine and a car driven by the decedent.

The Great Northern Railway's facilities existing at the scene of the accident, or as much thereof as is here relevant, consist of one mainline track running east-west and one passing track, both of which run parallel to, and 150 feet north of U. S. Highway 2. Approximately one-half mile east of the town of Chinook these tracks are joined from the south by a spur track which runs to a beet hopper and conveyor located about 760 feet south of Highway 2. As this spur approaches the highway it runs in a northeasterly-southwesterly direction so that it intersects the highway at about a 45 degree angle. This intersection was the scene of the accident which gave rise to the present litigation. Approximately 400 feet west of the beet spur crossing, the defendant operates an additional spur track which intersects Highway 2 in much the same fashion as the one just described. Although this latter spur and the defendant's operation thereon do not figure directly in the accident they are important for reasons which will be discussed later. This court has had prepared and included a map, which is a composite of plaintiffs' and defendants' exhibits, designated as Exhibit "A" for the purpose of clarificaton of the accident area.

EXHIBIT 'A'

On October 20, 1958, shortly after 7:00 P.M., defendant's railway engine number 231, manned by defendants, Engineer Johnson, Head Brakeman D'Hooge, and a fireman, a conductor and two rear brakemen backed down the beet spur to pick up several cars, some loaded with beets, some empty. These cars were hooked up. The engine and cars, at a speed of approximately three to four miles per hour, returned up the spur track and at 7:30 P.M., at the intersection of Highway 2, the car driven by the decedent Eugene O'Brien crashed into the pilot beam of Engine 231 on the right, or east side.

Plaintiff's complaint, in substance, alleged negligence on the part of defendants in that they failed to maintain a proper lookout; failed to maintain a warning at the crossing; failed to station a flagman at a dangerous crossing; failed to properly signal the approach of the train as it neared the crossing; and, that such negligence was the proximate cause of the accident and the resulting death of Eugene O'Brien.

In support of these allegations, plaintiffs at trial called three witnesses, Epler, Brown and Riddle. Epler testified that when he had crossed the crossing on his way to Chinook there had been no flagman present. He also testified that he had seen an engine to the south, about 300 to 400 feet distant, and that its headlight was burning. Riddle, who was a passenger in the car driven by Epler, testified to materially the same facts, except that in Riddle's estimation the approaching engine was considerably closer, about 100 feet. Epler further testified on cross-examination that he had crossed the intersection about 10 minutes before the accident had occurred and Riddle agreed. Each testified that he had not heard a whistle blowing at the time that they had crossed the intersection. Brown, accompanied by his father, had left Chinook by car traveling eastward on Highway 2; he had stopped his automobile at the intersection to await the crossing of defendant's train. He testified that he saw the approach of the train from the south and also that he had seen the lights of a car coming from the east. He also stated that he heard a whistle blow. He further testified that he saw neither a flagman nor a burning fuzee. On cross-examination, however, he testified that neither he nor his father had paid particular attention to the engine or the crossing immediately before the accident, but were directing their attention and faculties to the beet operation to the south. He also stated that, immediately after the crash he ran around the front of the engine and that he saw a fuzee about four or five inches in length, still burning, lying in the middle of the bridge.

In direct conflict with the testimony of these witnesses for the plaintiffs, defendant elicited testimony from Engineer Johnson and the two rear brakemen to the effect that they had seen defendant D'Hooge standing in the roadway, on the east side of the crossing, and that he was signaling with a lighted fuzee. Fireman Bolta, although he was on the opposite side of the engine, testified that, while he could not see D'Hooge, he could see the glare of the lighted fuzee on the crossing. D'Hooge himself testified that he was signaling with a lighted fuzee and that at the last moment had had to jump from the roadway to avoid being run down by the approaching auto driven by the decedent. All the defendant's witnesses testified that the whistle and bell on the engine were sounding prior to and at the time of the actual collision. In addition to the burning headlight, defendant's witnesses also testified, without contradiction, that the engine was further lighted by two classification lights, two lights illuminating No. 231, and two lights illuminating the steps on the front of the engine, the "pilot," which were used by members of the train crew. Defendant, by plats, photographs and supporting testimony established that at the time of the accident there were three warning signs located at distances of 1,775 feet, 522 feet, and 164 feet on the highway east of the crossing; that all of them were reflectorized and that all were visible to anyone approaching the crossing on the highway from the east. Defendant produced other photographs and related testimony from its witness Lindgren which showed without contradiction that, from a point 800 feet east of the crossing, anyone driving on Highway 2 and approaching the intersection had an unobstructed view of the spur track for a distance of 100 feet to the south.

Witnesses for both parties testified that decedent's automobile had left skid marks of 66½ feet on the highway; that the impact of the car striking the engine had been such that it had forced the motor of the car into the front seat of the auto; and,

that the removal of the auto from the front of defendant's engine was accomplished by "two or three pulls" of a wrecker.

Expert witnesses called by both parties testified as to speed, stopping distances, operation and effectiveness of locomotive and train brakes when applied to units similar to the one operated by the defendant on the night of the occurrence, all of which was in substantial agreement.

The case was given to the jury, under instructions; two issues being the primary negligence of the defendants and contributory negligence on the part of the plaintiffs' decedent. From a verdict in favor of the plaintiffs in the amount of $170,000 and judgment thereon, defendant appeals.

In its initial brief appellant sets out seventeen specifications of error. Those which we consider determinative of this appeal, or sufficiently relevant thereto, are numbers 5 through 13, and we shall take them up in the order presented in appellant's brief.

Appellant assigns as error the admission of testimony, over appellant's objection, that, in the opinion of the witness, the decedent was not exceeding the speed limit.

■■■ Garland, the respondent's witness, at the time of the accident was a highway patrolman and had investigated the accident in that capacity. On direct and cross-examination the witness admitted that he was not an eye witness to the accident, having arrived some five minutes thereafter; that, due to the impact, there was no way to determine the speed of the vehicle from the skidmarks on the highway; and, that he was not familiar with stopping distances in terms of speed. Shortly thereafter, in response to a question of whether there was any evidence of violation of the speed limit by the decedent, he replied, over appellant's objection, "I don't know whether I could judge and give a conclusive answer to that or not. In my own mind I don't think the man was exceeding the speed limit." We think that the witness' answer was predicated on pure speculation and conjecture; the appellant's ob-

jection that the question was without proper foundation and called for a conclusion was valid and should have been sustained. In view of the fact that the witness was a highway patrolman testifying as an expert witness, the testimony given by him might have been accorded considerable weight by the jury, and, inasmuch as it tended to establish the freedom of the decedent from contributory negligence, it was unduly prejudicial to the appellant's case and therefore reversible error to admit it.

In their specification of error number 6, the appellant contends that the lower court erred when it sustained the respondent's objection to its question propounded to the witness Epler, on cross-examination, as to where he went after he arrived in Chinook.

Having before us now the complete record of the proceedings below, it is obvious that the appellant, by this question, was attempting to establish that the engine movement to the south to which both Epler and Riddle had testified was not engine No. 231 which was involved in the fatal collision but, rather appellant's Extra No. 410D which was engaged in switching operations on the stockyard spur situated some 420 feet west of the accident scene and some ten or fifteen minutes prior to the actual collision. Had the appellant thus been successful in showing this, then the negative testimony of both Epler and Riddle regarding the presence or absence of a flagman would have been rendered worthless since the facts to which they testified would have been too remote chronologically and geographically from the time and situs of the accident.

Appellant insists that the lower court, by sustaining the objection to the question, materially restricted their right of cross-examination and in support of this conclusion cite State v. McKnight, 129 Mont. 8, 281 P.2d 816 (1955); State v. Howard, 30 Mont. 518, 77 P. 50, 54; and 98 C.J.S. Witnesses § 377. We agree with counsel that "as a general rule, in the

interests of truth and justice, a wide latitude should be permitted in the cross-examination of an adverse witness; or as otherwise stated, a full cross-examination should be permitted * * *." See 98 C.J.S. Witnesses § 377.

■ It does not follow, however, that the ruling of the lower court in this instance offended the rule or otherwise unduly restrained appellant in its attempt to reduce or completely nullify the effect of the witness' direct testimony. Having before us the record of the proceedings and the briefs of both counsel, the route desired to be taken by the appellant, the ends sought to be achieved and the relevancy of the question thereto are all apparent. It is also just as manifest from the record that, at the point in respondents' case where the inquiry was made, there had been no evidence introduced which had established that such switching operations were being conducted on the stockyard spur or that it was germane to the issues being tried. We are constrained to view the objection in the same light as did the trial court; particularly, in view of the fact that subsequent to the court's ruling, the appellant made no effort to pursue further the line of questioning; neither did it make an offer of proof with respect to the testimony sought to be elicited, nor did it request the court that the witness be released and later recalled after sufficient evidence had been adduced which would have revealed the nature and purpose of the lne of questioning pursued. (State v. Bain, 130 Mont. 90, 295 P.2d 241; see also, 53 Am.Jur., Trial, § 99, et seq.)

Consequently, we hold that under the facts and circumstances the question propounded at that stage of the trial was irrelevant and properly excluded and, hence, there was no error.

Appellant's specifications of error 7, 8, and 9 relate to the giving of court's Instructions 9, 11, and 16 as offered by respondent. These instructions, set forth respectively, read as follows:

"9. You are instructed that if you find for the plaintiffs such damages may be given as under all the circumstances of the case may be just."

"11. You are instructed that it was the duty of the defendant, Great Northern Railway, to maintain a flagman at the beet spur crossing, and it was its duty to require him to be at his post and to warn travelers of the approach of trains and his neglect to perform the usual and ordinary functions of his position may be sufficient to render the company liable for an injury resulting from his neglect even though the duty was voluntarily undertaken. The mere presence of a flagman at the crossing is not sufficient, it is his duty to warn travelers so as to enable them to take proper precautions."

"16. No inflexible rule can be laid down as to what constitutes contributory negligence as each case must be decided on its own facts. The mere fact that a traveler has been run down by a train is of course insufficient to establish contributory negligence and whether he could have avoided the accident by acting differently than he did is not a complete test."

██ With respect to Instruction No. 9 relating to damages, appellant contends that, inasmuch as all the elements to be considered in fixing damages were given in court's Instruction No. 6, the giving of this abstract rule was repetitious, ambiguous and tended to lead the jury to believe that damages other than those detailed in Instruction No. 6 could be awarded. We agree that the inclusion of this instruction was repetitious; we do not agree, however, that it was ambiguous, misleading or prejudicial. There is nothing in the instruction which would lead reasonable men to assess damages on anything other than the basis of evidence introduced at trial; nor do we think that the instruction offered any additional grounds for determination of damages other than those set forth in Instruction No. 6. The general rule, and better practice, dictates that repetitious instructions, setting forth abstract principles of law should be avoided; but, in the absence

of any showing that the jury was misled, the giving of such instructions does not constitute reversible error. (38 Am.Jur., Negligence, § 370; 53 Am.Jur., Trial, § 559; 88 C.J.S. Trial § 340, and authorities cited therein.) Viewing as we must the instructions as a whole, we conclude that the instruction, although repetitious, was not prejudicial to appellant's substantial rights and, hence, there was no error. (Wolf v. Barry O'Leary, Inc., 132 Mont. 468, 318 P.2d 582.)

It follows from what we have just said that the appellant's specification of error No. 9, relative to the giving of Instruction No. 16 which dealt with the issue of contributory negligence, stands on no firmer ground than the assignment of error just reviewed. Admittedly, the law of contributory negligence had been covered by Instructions 13 and 32; we think, however, that at most the instruction was supplemental and if repetitious, as contended by appellant, did not mislead the jury and did not therefore, constitute reversible error.

Appellant predicates error in the giving of Instruction 11 on the grounds that there was no duty, either in fact or in law, on the part of the Railway Company to maintain a flagman at the crossing. They insist that the company rule requiring a flagman at crossings and the fact that defendant D'Hooge was present are only conditions which would relate to the question of whether the appellant had exercised reasonable care.

Whether, by our former decisions or under the relevant statutes, there exists a legal duty on the part of appellant to maintain a flagman at its crossings we need not now decide. Whether such duty devolved upon the appellant in the instant case is, we think, determined by the pleadings.

Respondents allege in paragraph four of their first cause of action that "it was the duty of the said defendant, George D'Hooge, at the time of the collision and at the crossing hereinafter described, to provide visual warning to oncoming traffic, including the said Eugene J. O'Brien, of the approach

of trains." Appellant's answer to this allegation "admits the allegation of Paragraph IV of said First Cause of Action." We think the appellants are precluded from denying the existence of such duty and are bound by their pleadings under the rule set forth in the case of Anderson v. Mace, 99 Mont. 421, 427, 45 P.2d 771, 773 (1935) where we said: "It is the general rule that allegations, statements, or admissions contained in a pleading are conclusive as against the pleader, and are admissible as against the party making them in the litigation as proof of the facts which they admit, upon a subsequent trial of the case or upon the trial of another action. This rule is found in 49 C.J. 122; and the foregoing language is followed by the statement, 'and that the facts which are admitted by the pleadings are to be taken as true for the purpose of the action,' etc. Weatherman v. Reid, 62 Mont. 522, 205 P. 251." This rule, we think, is decisive on the issue of the scope of appellant's duty in the instant case; the appellant in its answer admitted that such duty existed, and subsequently, at trial elicited testimony which tended to prove that the exercise of such duty was in fact being undertaken. We conclude that the instruction was proper and there was no error. (41 Am. Jur., Pleading, § 201.)

Appellant further assigns as error the refusal of the trial court to give its proposed Instructions 30, 32, 34 and 38 which, respectively, read as follows:

"30. You are instructed that railway tracks and highway signs that indicate the presence of railroad crossings are themselves warnings of danger, and if you find from the evidence that Eugene J. O'Brien failed to look and listen for approaching trains, and to stop before driving onto the track, if this was necessary to make his looking and listening for approaching trains effective, he was guilty of negligence which contributed to his injury, and your verdict must be in favor of the defendants."

"32. If you find from the evidence that Eugene J. O'Brien

failed to look and listen and to stop if necessary to make his looking and listening effective, as he approached the crossing he was guilty of contributory negligence and your verdict must be in favor of the defendants."

"34. You are instructed that if the physical facts established by the evidence demonstrate that, had Eugene J. O'Brien looked, he could not have failed to see the approaching train, then Eugene J. O'Brien was guilty of contributory negligence, and your verdict must be in favor of the defendants."

"38. You are instructed that railway trains have the right of way over their own railway lines and may run their trains at will, being responsible for due care to protect the lives and property of others."

We are of the opinion that appellant's proposed Instruction No. 30 is a correct statement of the law in Montana as established by our former decisions; appellants were entitled to have it given as the law of the case, and the failure of the lower court to so instruct constituted, in our view, reversible error.

Instructions 30 and 32 are repetitious; the latter was offered as an alternative to the former. The lower court was not obliged to give them both but it fell into error when it refused to give either of them. As to appellant's proposed Instructions 34 and 38, in the case of Roberts v. Chicago, M. & St. P. Ry Co., 67 Mont. 472, 479, 216 P. 332, 334 (1923), this court stated:

"* * * From the various expressions of this court, the following rules are gathered: The presence of a railroad track is of itself a warning of danger; a person approaching a railroad crossing is required to take all reasonable precautions to assure himself by actual observation that there is no danger from an approaching train; the failure of the persons in charge of the train to give warning signal of its approach to the crossing does not relieve the traveler of the necessity of making a vigilant use of his senses to ascertain whether it is safe to proceed;

the traveler must use ordinary care to make his looking and listening reasonably effective. It may also be said that whenever it appears that there is a zone of safety within which a traveler upon a highway may, by looking or listening, and stopping to do so if need be, ascertain the presence of an oncoming train, it is his duty to make his observation within such zone. If he proceeds from the place of safety regardless of an approaching train of which he has knowledge, or if he leaves the place of safety without having made a vigilant use of his senses to discover a danger which is present and could have been seen from such place, then it will be held to be his negligence which is the proximate cause of an injury resulting from a collision regardless of circumstances tending to show negligence on the part of the railroad operators."

Our more recent decisions are in accord: West v. Davis, 71 Mont. 31, 227 P. 41; Grant v. Chicago M. & St. P. Ry. Co., 78 Mont. 97, 252 P. 382; Rau v. Northern Pacific Ry Co., 87 Mont. 521, 289 P. 580; Great Northern Ry. Co. v. Taulbee, 9th Cir. (1937), 92 F.2d 20, cert. den., 302 U.S. 766, 58 S.Ct. 476, 82 L.Ed. 595; Sullivan v. Northern Pacific Ry. Co., 109 Mont. 93, 94 P.2d 651; Incret v. Chicago, M. & St. P. Ry. Co., 107 Mont. 394, 86 P.2d 12; Monforton v. Northern Pacific Ry Co., 138 Mont. 191, 355 P.2d 501.

Further, the law established by these cases regarding the scope of the duty of highway travelers utilizing railway crossings has been the subject of legislative enactment. Section 32-2191, R.C.M.1947, provides, in part, that "(a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when: * * *

"3. A railroad train approaching within approximately one thousand five hundred (1,500) feet of the highway crossing

emits a signal audible from such distance and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;

"4. An approaching railroad train is plainly visible and is in hazardous proximity to such crossing. * * *"

In the case of Incret v. Chicago, etc. Co., 107 Mont. at 411, 86 P.2d at 21, supra, we said:

"It must be kept in mind that railway trains have the right of way over their own railway lines and may run their trains at will, being responsible for due care to protect the lives and property of others."

It follows, by these authorities, that the proffered instructions of the appellant properly reflected the law in Montana and the jury should have been so instructed.

Accordingly, the cause is reversed and remanded for new trial.

It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES and JOHN C. HARRISON, concur.

MR. JUSTICE ADAIR, dissenting:

I dissent and reserve the right to file such dissent at a later date.