TERRYAYNE O'BRIEN, a minor, SHERMAN O'BRIEN, a minor, MARLYS O'BRIEN et al., Plaintiffs and Respondents, v. GREAT NORTHERN RAILROAD COMPANY, et al., Defendants and Appellants.

No. 11057.
Submitted October 3, 1966. Decided December 29, 1966.
Rehearing denied January 17, 1967.
421 P.2d 710.
See also 145 Mont. 13, 400 P.2d 634.

432

Weir, Gough & Booth, Edwin S. Booth (argued), Cordell Johnson (argued), Helena, Harry L. Burns (appeared), Chinook, for appellants.

D. J. Sias, Oscar Hendrickson (argued), Chinook, Baxter Larson (argued), Wolf Point, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment awarding the plaintiffs $204,000 damages for the death of Eugene J. O'Brien which resulted when an automobile he was driving collided with a Great Northern Railway locomotive.

The accident occurred October 20, 1958, sometime after 7:00 p. m. at a point where U. S. Highway 2 crosses a Great Northern Railway beet spur near Chinook, Montana. The spur track leads northeast from a sugar beet loading facility, crosses east-west Highway 2 at about a 45 degree angle and connects to the mainline tracks which run parallel to Highway 2 and about 150 feet north. At the point where the spur connects, the mainline consists of a double set of tracks; the main track to the north and a passing track to the south.

O'Brien approached the crossing from the east while traveling west on Highway 2. The sun had set and he approached

against the lights of the City of Chinook which is a little less than a mile from the beet spur crossing. As he approached he passed a "slow" sign and a railroad crossing or common "cross buck" sign. Engine 231 had been sitting 15 car lengths or about 750 feet from the crossing waiting for the crew to finish coupling the cars they had been sent to pick up. The defendant-engineer, Johnson, testified that he gave the customary two short blasts on the whistle to indicate that the train was about to move and started the bell ringing. Engine 231 was then started forward toward the crossing at about 8 miles per hour and decelerated to about 4 miles per hour before reaching the crossing. The engineer observed the oncoming O'Brien automobile at some distance but did not at first see a need to stop the train. At approximately the same time, an east bound freight, extra 410D, was accelerating from a stop on the mainline track so that it passed Engine 231 north of the spur track crossing near the time of the accident.

At this point, the testimony comes into serious dispute. The appellants, hereinafter called the defendants, attempted to prove that head brakeman D'Hooge was at the spur crossing prior to the arrival of Engine 231 and was facing the approaching O'Brien car flagging with a lighted fusee and was forced to jump out of the way to avoid being struck. There was also testimony by persons who had heard one or more whistles blow, but this was met with testimony of others who had either not heard any whistles or could not tell if the whistle heard was that of Engine 231 on the beet spur or that of Extra 410D on the mainline track. The testimony of the crew of train 231 was that the O'Brien automobile continued to approach at a rate faster than the other traffic in the area and that Engine 231 continued toward the crossing at about 4 miles per hour. The engineer further testified that he applied the full emergency braking system when he determined that the O'Brien car was not going to stop.

The O'Brien car struck the right front portion of Engine

231 imbedding itself into a ladder and "pilot" beam. Testimony from several witnesses indicated that there was 66½ feet of skid marks left by the O'Brien car and that the force of the impact was such that a wrecker experienced some difficulty in separating the locomotive and the car.

It was completely dark at the time of the collision but there were no significant obstructions to visibility. A sign welcoming travelers to Chinook might have obscured the locomotive for a short period as the O'Brien car approached, but it would have ceased to have been a factor long before it would have been necessary for O'Brien to begin decelerating for the crossing. There seems to be no question that the lights of the City of Chinook on the side of the crossing opposite the O'Brien car and the lights of an oil refinery to the side of the crossing would have provided some undetermined amount of distraction. The land where the tracks run in this area is level except for a bridge over the West Fork of the Milk River which runs less than a hundred feet from the crossing. Engine 231 had its bright beam illuminated in the front of the train as well as the "number" light and several smaller "ground" lights on the side. O'Brien had the headlights on his automobile illuminated and the warning signs he passed as he approached the crossing were claimed to have been reflectorized. Several witnesses testified that they were able to observe traffic on both sides of the tracks at distances of several hundred feet.

The testimony of persons who were eye-witnesses to the collision or viewed the scene within a very few moments thereafter were limited to the crew of trains 231 and 410D; the passengers from a car which approached the crossing from the west and walked around the front of Engine 231 immediately after they heard the collision, and; the passengers of a car which approached behind the O'Brien car shortly after the collision.

The widow of O'Brien and his three dependent children brought an action sounding in negligence against the railroad

corporation, the engineer and the head brakeman of train 231. The answer alleged contributory negligence which was in turn answered by allegations invoking the doctrine of last clear chance. Plaintiffs had judgment for $170,000. Defendants appealed and this court reversed and remanded for a new trial in its decision, O'Brien v. Great Northern Ry. Co., 145 Mont. 13,400 P.2d 634. Upon the second trial, plaintiffs had judgment for $204,000 from which the defendants bring this appeal.

Defendants base their appeal on the grounds that there is insufficient evidence to find any primary negligence on the part of the defendants; that the defendants' motion for a directed verdict should have been granted because the plaintiffs' decedent was contributorily negligent as a matter of law, and; that the verdict was excessive. We find that the issue of contributory negligence and the court's refusal to grant a directed verdict thereon to be determinative of this appeal, and therefore this will be the only specification of error considered in this appeal.

Upon a motion for a directed verdict the evidence must be viewed from a standpoint most favorable to the prevailing party and every fact must be deemed proved which the evidence tends to prove. Hernandez v. Chicago, B. & Q. Ry. Co., 144 Mont. 585, 398 P.2d 953. All substantial evidence disclosed by the record which may be used to sustain the jury verdict will be given its full probative effect. Estate of Dillenburg, 136 Mont. 542, 349 P.2d 573. Therefore, this opinion is rendered under the assumptions that there was no flagman at the crossing; that no fusee was used prior to the collision, and; that the deceased was traveling a legal and reasonable rate of speed. (This assumption in spite of strong physical evidence to the contrary.)

It is the duty of every motorist approaching a railroad crossing to conduct himself as would a reasonably prudent man under similar circumstances and to comply with all statutory mandates. Failure to fulfill either of these duties constitutes

negligence which, if shown to have been the proximate cause of the injury complained of, will operate as a complete bar to any recovery thereon even though the defendant is shown to have been negligent. Tiddy v. City of Butte, 104 Mont. 202, 65 P.2d 605.

A reasonably prudent man approaching a railroad crossing would be expected to look and listen to determine what hazards may be present and to use diligence to make the act of using his senses effective. Hannigan v. Northern Pacific Ry Co., 142 Mont. 335, 344, 384 P.2d 493, 498. He is charged not only with the duty of looking straight ahead but he must keep a lookout laterally as well. It is presumed that he will see that which he must have seen if he looked. Montforton v. Northern Pacific Ry. Co., 138 Mont. 191, 355 P.2d 501; Autio v. Miller, 92 Mont. 150, 11 P.2d 1039. Where the evidence raises this presumption and it is not later rebutted by other evidence it has the effect of placing a driver in the position of having seen the danger and he will not be heard to deny it. If a train is at a point within the driver's vision while he was at a place of safety he is deemed to have seen it and progressed regardless of the danger or he did not make use of his senses. Feely v. Northern Pacific Ry. Co., 9 Cir., 230 F.2d 316.

Applying the plaintiffs' own evidence to the rules just set forth we conclude that O'Brien was not acting as a reasonably prudent man when he was approaching the crossing. The physical facts of the beet spur crossing coupled with a judgment of the relative speeds of the engine and the O'Brien car which is the most favorable possible to the plaintiffs' case make it impossible for us to reach any conclusion other than that O'Brien could have seen Engine 231 and reacted to the danger if he had tried to do so. The very slight degree of obstruction to O'Brien's visibility is particularly impressive. Proceeding as he did, he overlooked not one but two complete trains. There seems to be no reason to doubt that O'Brien knew of the existence of the crossing. It would even be fair

to infer that he was familiar with the beet spur crossing. In spite of his familiarity with the crossing he proceeded forward without any substantial change of speed until at a point little more than 66½ feet from the crossing where his brakes became effective with sufficient force to leave skid marks. It appears that O'Brien did absolutely nothing in deference to the crossing he knew or should have known lay directly in his path. The inference most favorable to the plaintiffs will not go further than to establish that O'Brien was driving at night on Highway 2 at a speed that was lawful and reasonable under the existing conditions but as he approached a railroad crossing which he knew or should have known lay in his path he did not materially vary that driving posture until at a point a little more than 66½ feet prior to the fatal collision. Therefore, we conclude that Eugene O'Brien was negligent in that he did not use his senses to detect danger which would have become obvious if he had used proper diligence or that he was negligent in not taking measures to avoid the detected danger and that this negligence was the proximate cause of his death.

We are further of the opinion that O'Brien was negligent in that he did not comply with a statutory mandate governing motorists passing over railroad crossings. Section 72-164, R.C.M.1947, provides in material part: "* * * all persons driving motor vehicles upon the public highways of this state, outside of corporate limits of incorporated cities or towns, where the view is obscure, or when a moving train is within sight or hearing, shall bring said vehicle to a full stop not less than ten (10) nor more than one hundred (100) feet from where said highway intersects railroad tracks within this state, before crossing the same, at all crossings where a flagman or mechanical device is not maintained to warn the traveling public of approaching trains or cars." As was noted in the Montforton case, supra, at 138 Mont. 207, 355 P.2d 501, this 1919 enactment effected a change in the law which until that time had been expressed by Walters v. Chicago, Milwaukee & Puget

438

Sound Ry. Co., 47 Mont. 501, 133 P. 357, 46 L.R.A.,N.S., 702. In the Walters case the court had refused the "stop, look and listen" rule which had been urged upon them, and had allowed the issue of contributory negligence to rest on the traditional test of the "reasonably prudent man" standard of care. The legal effect of this statute is clear. Drivers approaching a railroad crossing where a train is within sight or hearing must bring their vehicles to a complete stop not less than 10 nor more than 100 feet from the crossing. The same stop is required if the crossing and the view is not clear, full and distinct. Broberg v. Northern Pacific Ry. Co., 120 Mont. 280, 182 P.2d 851. Since we have concluded that O'Brien could have seen Engine 231 if he had looked he was negligent in not stopping as required by section 72-164. If it were conceded that the view was obscured so that O'Brien could not have seen the train the result is the same under section 72-164 since we have concluded that he knew or should have known that the crossing lay ahead.

As a general rule contributory negligence is a matter of defense and presents a question for the jury. Everett v. Hines, 64 Mont. 244, 208 P. 1063; Puckett v. Sherman & Reed, 62 Mont. 395, 205 P. 250. The exception to this rule arises when the evidence is of such a character that it will support no other legitimate inference so that a reasonable man or a jury following proper instruction could not come to a different conclusion. Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.2d 1025; Boepple v. Mohalt, 101 Mont. 417, 54 P.2d 857. If this exception arises the issue of contributory negligence becomes a matter of law to be determined by the court. We hold that the plaintiffs' case-in-chief is sufficient for a finding of contributory negligence as a matter of law. Where the plaintiffs' own case presents evidence which is sufficient to raise the issue of contributory negligence it is incumbent on the plaintiffs to produce exculpatory evidence or be barred from recovery. Grant v. Chicago, Milwaukee & St. Paul Ry. Co., 78

Mont. 97, 252 P. 382. In so holding we are not unmindful of the fact that there have been two jury verdicts in favor of the plaintiffs. The first verdict can be disregarded on the ground that it was rendered on erroneous instruction, as this court held in the first appeal. We do not find any prejudicial error in the second trial and therefore conclude that the jury acted out of passion or prejudice or simply disregarded the instructions on contributory negligence. This court has, on several occasions in the past, found contributory negligence as a matter of law in personal injury actions presenting similar factual situations. Sztaba v. Great Northern Ry. Co., 147 Mont. 185, 411 P.2d 379; Montforton v. Northern Pacific Ry. Co., supra; Haney v. Mutual Creamery Co., 67 Mont. 278, 215 P. 656; Keith v. Great Northern Ry. Co., 60 Mont. 505, 199 P. 718.

Respondents assert in their brief that the decision rendered as a result of the first appeal became "the law of the case," and, that since this court ordered a new trial, it necessarily decided that there was no contributory negligence as a matter of law. The district court appears to have adopted the same logic when it denied the defendants' motion for a new trial at the end of the plaintiffs' case-in-chief.

The doctrine of "the law of the case" has long been recognized by this court. The doctrine establishes the principle that the decision of the supreme court upon a former appeal of the same cause is binding upon a subsequent appeal whether right or wrong. The former appeal is binding upon all of the parties, the district court and the supreme court upon a subsequent appeal. Libin v. Huffine, 124 Mont. 361, 224 P.2d 144; Apple v. Edwards, 123 Mont. 135, 211 P.2d 138. The doctrine is distinguished from the doctrines of res judicata and stare decisis in that not only must the subject matter and the parties be the same it must be the identical action which was appealed. See annotation in 87 A.L.R.2d 271. The sound policy of providing uniformity and predictability to decisions rendered by this court requires strict enforcement of the doctrine

of "the law of the case." However, the development made in the respondents' brief requires some additional explanation concerning the application of the doctrine.

The application of the doctrine of "the law of the case" is limited to those issues which were actually decided and were necessary to the decision. The doctrine does not extend so far as to include matter which was consequential, incidental, or not decided by the court. Wastl v. Montana Union Ry. Co., 24 Mont. 159, 61 P. 9. This court, in rendering its decision on the first appeal of this case did not pass upon the sufficiency of the evidence. It only determined that error had been committed affecting both plaintiffs and defendants, issued instructions to correct that error and ordered a new trial to be conducted in conformity with those instructions.

Granting or refusing to grant a new trial is largely discretionary with the district court and is subject to the control of the supreme court. Hinton v. Peterson, 118 Mont. 574, 169 P.2d 333. The circumstances under which this case was tried confirm the wisdom of this court's exercise of its discretionary power to grant a new trial in lieu of some other relief. As already observed there was error affecting both the plaintiffs and the defendants. We think this error was magnified by the fact that the plaintiffs were obliged to rely almost exclusively on the testimony of the defendant railroad's employees to establish their case-in-chief. Under these circumstances a court will allow the plaintiffs additional latitude before relying upon such a record to dismiss the action on legal issues alone.

We do not agree with the trial court's statement that it was precluded from granting the defendants' motion for a directed verdict because the new trial granted by this court amounted to a legal determination that there was a jury issue on contributory negligence. Reversing a judgment makes it void as if never rendered. Central Montana Stockyards v. Fraser, 133 Mont. 168, 320 P.2d 981. When a new trial is

granted the parties are returned to the position they occupied before the trial. Waite v. Waite, 143 Mont. 248, 389 P.2d 181. A motion for a directed verdict requires that the record of the current trial be examined to determine if the evidence viewed in the light most favorable to the resisting party is sufficient to grant such motion. The supreme court may not be bound in advance to a record which was not in existence at the time the decision was rendered. The new record is made independently of the old record except as affected by the rules of evidence and the old record becomes functus officio. If the prior decision of the supreme court does not expressly pass on the sufficiency of the evidence, the district court is free to consider a motion for a directed verdict as if there had been no prior proceedings.

Carlson v. Northern Pac. Ry. Co., 86 Mont. 78, 281 P. 913, relied upon heavily by the respondents, is distinguishable from this case. The court in the Carlson case did expressly pass on a motion for a directed verdict and further decided upon the second appeal that there was no substantial difference in the evidence in the second record.

Reversed and dismissed with instruction that the clerk enter judgment for the defendants.

HONORABLE CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE DOYLE, concur.

MR. JUSTICE JOHN C. HARRISON:

I dissent. Having concurred in the result in the majority opinion of the first appeal of this case, O'Brien v. Great Northern Railroad Company, 145 Mont. 13, 400 P.2d 634, I feel that I must now register my dissent to the action of the majority holding. Having carefully reviewed the majority opinion I cannot but feel that they have substituted their opinion of the facts in the case for what the jury found to be the facts. While my personal opinion of the facts, had I been a juror, might have differed with what they found, as an appellate

442

matter I feel that having been properly instructed as to their duties as the triers of the facts that we should not set their judgment aside. For this reason I must dissent.

MR. JUSTICE ADAIR, dissenting:

In my opinion the judgment entered in the District Court upon the second trial of this cause, which was in conformity with the verdict returned by the jury is right and just and that such verdict should be respected and that the judgment entered thereon by the trial judge should be affirmed by this, the appellate court. I therefore respectfully register my dissent to the foregoing majority opinion in this cause, which for the second time disregards the verdict of a jury.