MR. JUSTICE SHEEHY,
dissenting:
I concur with the dissent of Mr. Justice Morrison and add these comments.
This is the worst case of judicial interference by this Court with a jury verdict since the notorious O’Brien cases (O’Brien v. Great Northern Railway Company (1965), 145 Mont. 13, 400 P.2d 634; O'Brien v. Great Northern Railway Company (1966), 148 Mont. 429, 421 P.2d 710, cert. den. 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 974). It is the worst case of judicial aberration since the infamous Ashcraft case (Ashcraft v. Montana Power Company (1971), 156 Mont. 368, 480 P.2d 812). The O’Brien cases convinced the plaintiffs’ bar in Montana that there was no judicial restraint in the *258 make-up of this Court in the 1960s. The Ashcraft ruling was corrected and overruled by the members of the Constitutional Convention of 1972 through the adoption of Art. II, Section 16 of the Montana Constitution. The deleterious effect of the opinion in this case is its announcement that the right of a jury to set damages is hereafter subject to the consent of the majority of this Court.
The right to jury trial and the right of parties to have a jury determine the cause is limited to one jury of no less than six persons and no more than twelve. There is no lawful provision for a second super jury, composed of four majority members of this Court. The first jury at least was sworn in. The second and unsworn jury, in conference and by memoranda, debated on what they might agree, ranging from reversal to $200,000 to $2,500,000. Their conclusion was reached in a conference telephone conversation by the majority without the minority members of the Court, who were not invited and did not participate. Of course, the minority members would not have participated in any event, since they did not agree with the decision. But this was the first occasion in my eight years on the court that the decision of a divided court was reached ex-conference. The resultant figure in the majority opinion has no relation to the evidence, and no explanation is offered nor can be offered by the majority for the figure adopted.
Worse, the majority do not point to a single error made by the District Court in the conduct of the trial. Only the jury is blamed, accused of passion and prejudice. Ignored is the qualitative element of outrage of the jurors that must inhere in punitive damages awards: the jury must be convinced that the defendant was so motivated by malice, fraud and oppression in its treatment of the plaintiff that, in addition to punishment, to deter others an award must be made in an amount sufficient to set an example. It is not idly that punitive damages are referred to in the codes as exemplary damages.
Would that the majority, whose consciences are shocked by the jury, were more shocked by the flagrant abuse heaped upon the plaintiff and other insureds by this insurance company. For 25 years under the evidence here, the last instance a week before the trial of this case, this insurance company persisted as a business practice in misleading its insureds into signing agreements which waived their legal rights and claims against the company, through deception and fraud. Then the company denied the claims. This insured, after signing such an agreement, and getting such a denial, was forced to *259 mortgage his home to settle a claim which rightfully should have been settled by the insurance company as the evidence shows. That plaintiff suffered emotional distress is beyond cavil. Yet the majority here have wiped out, without comment, his jury-given award for emotional distress.
When the courts cannot be relied on to enforce jury awards against outrageous conduct, and awards are reversed on the grounds of passion and prejudice, the jury members are demeaned by an implication, nay, accusation of unfairness. In my view, this jury acted responsibly toward an irresponsible defendant. It did not act unfairly. It should be supported, not demeaned.