No. 87-202

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

DWIGHT DOUGLAS SMITH,

Plaintiff and Appellant,

-vs-

MARLENE RORVIK,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Channing J. Hartelius; Hartelius, Ferguson & Baker,
Great Falls, Montana

For Respondent:

Robert Terrazas; Worden, Thane & Haines, Missoula,
Montana

---

Submitted on Briefs: Nov. 24, 1987

Decided: March 9, 1988

Filed: MAR 9 - 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Dwight Douglas Smith appeals from a verdict and judgment in favor of defendant Marlene Rorvik in the District Court, Twentieth Judicial District, Lake County, arising out of a car-pedestrian collision which occurred on Airport Road, near St. Ignatius on June 13, 1984.

On consideration, we reverse and remand for a new trial.

We examine the following issues on appeal:

1. The propriety of the opinion evidence of the highway patrol officer.

2. Proper jury instructions on the statutory duty of a driver relating to pedestrians.

3. Proper instructions respecting warning devices for disabled vehicles.

4. Whether counsel may argue to the jury on the legal effect of the application of the comparative negligence statute.

On June 13, 1984, plaintiff Smith was operating a front-end loader on a public highway. Because the engine of the loader overheated, he parked the vehicle on the right side of the east bound lane of the roadway so that he could obtain water from a nearby irrigation ditch. As parked, his loader occupied 7 feet 6 inches of the 22 foot total paved width of the roadway.

Randy Monroe was following Smith in a truck. He pulled his truck off to the right side of the roadway and came to a stop behind the loader. Monroe activated his emergency flashers and then attempted to assist Smith. Neither Smith nor Monroe placed any emergency warning devices on the roadway. Smith climbed up on the loader's tire in order to

pour two pop bottles of water into the radiator of the vehicle. He was injured shortly thereafter.

Marlene Rorvik was driving an automobile east on the same roadway. She testified that she saw the loader and the truck parked on the right side of the roadway. She did not see any flashing lights but she did see a man on the loader. As she was passing, her vehicle struck Smith, who was then on the pavement.

Rorvik testified that Smith jumped from the loader tire onto the roadway. Smith contended that he was struck as he walked from behind the loader. Under either version, Smith was on the roadway when struck.

A Montana highway patrol officer investigated the accident, arriving at the accident scene approximately 20 minutes after the occurrence. Smith had already been transported to the hospital in an ambulance, and Monroe had moved the truck, located behind the loader. No citations for criminal traffic violations were issued by the highway patrolman to either party.

Smith filed an action against the defendant driver in the Lake County District Court, seeking damages for the personal injuries he sustained as a result of a pedestrian-car collision.

THE TESTIMONY OF THE HIGHWAY PATROLMAN

Far in advance of the trial, the highway patrolman was interviewed and deposed by counsel for Smith. The patrolman was also interviewed by defendant's counsel and the patrolman accompanied counsel for the defendant to the scene of the occurrence prior to the trial. The patrolman was named as a witness by both parties but he was not named as an expert witness by Rorvik's counsel in response to Smith's interrogatories. Smith contends it was reversible error for

the trial court to permit the patrolman to testify as an expert in that situation.

The patrolman testified that he was notified of the accident at 7:00 p.m. on that date and reached the scene about 20 minutes later. As he came to the accident scene, he passed an ambulance which was already transporting Smith to the hospital in St. Ignatius. He observed the loader in the eastbound half of the highway with all four wheels on the pavement. He measured the loader and determined the distance that it projected into the roadway.

The patrolman interviewed Marlene Rorvik at the scene. She told him she had begun to proceed around the loader on the road when a person jumped from the loader and was struck by her car. The patrolman talked to other witnesses at the scene. Randy Monroe said he had not seen the accident since he had his back turned. Monroe was in a field looking for a container for water. The patrolman also talked to Lynn Birthmark and Steve Weingart, the driver and passenger in a vehicle following Marlene Rorvik, who told him that they had been traveling at approximately 35 miles per hour. They did not tell him anything about her speed, the point of impact, or the point of the highway where Smith landed after the collision. The patrolman noted on his investigation report that the speed limit at the time of the accident would have been 55 miles per hour. (The actual speed limit is disputed; it was probably 35 miles per hour, though no witness, including the highway patrolman, saw any signs respecting that speed limit. A county road supervisor testified that to his knowledge such 35 miles per hour signs were posted on the date of the accident.)

In direct examination, the patrolman stated that he had been a highway patrolman for 16 years and that he investigated approximately 1600 accidents in that time. He

had attended approximately 80 hours of classroom training on accident investigation. He had testified as an opinion witness about the cause of accidents in other cases.

The patrolman testified that on arriving at the accident scene, he observed the position of the loader parked on the highway, measured its bucket which extended 7 feet 6 inches into the highway surface, measured the total width of the highway, and talked to Marlene Rorvik and witnesses Lynn Birthmark and Steve Weingard as well as Randy Monroe. He did not ever talk to the plaintiff Dwight Smith. He determined that there were no flares or other warning devices set out behind or in front of the Smith vehicle. He determined what Smith had done prior to the impact by the statements he received from Marlene Rorvik. Before the patrolman arrived, Randy Monroe had moved the truck from its position behind the loader. The patrolman did not learn of the presence of the truck behind the loader until days later.

On cross-examination, the patrolman admitted that he assumed the speed limit was 55 miles per hour because no speed limit sign was posted; it was his opinion that Smith did not properly display flags and flares at the scene, and that he had failed to yield the right of way to a vehicle as a pedestrian; and he did not know when he formed his opinion that a truck had been parked behind the front end loader so that Rorvik had to pass the truck before she could pass the loader. It also developed on cross-examination that the patrolman had thought, from the position of the shovel on the loader, that it was going in the other direction and was parked on the wrong side of the road. There were no skidmarks and the patrolman did not determine the stopping distance of the Rorvik vehicle from the point of impact with the pedestrian to the place where the vehicle had stopped; he did not determine nor measure the distance that Smith had

been thrown by the impact from the vehicle from the point of impact to the place where he came to rest; his discussions with Randy Monroe and Lynn Birthmark were brief, and he stated that they did not volunteer any information to him. He testified that the damage to the Rorvik vehicle was as portrayed in Exhibit C, a photograph which shows scuff marks of some sort on the bumper below and to the right of the left headlight and some scuff marks on the front part of the bonnet or hood of the Rorvik vehicle.

In his direct examination, the patrolman testified as follows:

Q. Now, Officer, based upon your investigation of the accident, why didn't you cite Ms. Rorvik for speeding? A. I had no evidence to support the fact that she was speeding.

Q. Why didn't you cite her for careless driving? A. I had no evidence to prove she was driving carelessly.

Q. Why didn't you cite her for driving in an unsafe and imprudent manner? A. I felt she was driving safe at the time.

Q. Why didn't you cite her for failure to reduce her speed in the face of a potentially hazardous situation? A. I feel she did.

Q. Why didn't you cite her for failing to pass safely? A. I feel she was passing safely.

Q. Why didn't you cite her for failing to exercise due care to avoid colliding with a pedestrian? A. I feel that she did.

Q. Why didn't you cite her for being negligent or for violation of a basic rule? A. She was not negligent and she violated no basic rule.

MR. RYAN: Your Honor, excuse me, I'm going to move to strike the witness' answer--the witness' answer he volunteered about negligence--on the grounds

it's a legal conclusion, speculative and should not have been given that way.

THE COURT: Overruled, the answer will stand.

Those questions and the answers given constitute prejudicial error against the plaintiff Smith. The trial court should have sustained the objection to the reference about negligence. The questions were objectionable, even though the patrolman was testifying as an expert. The questions were objectionable at least on the following grounds: 1) they were irrelevant; 2) they were argumentative in form; 3) they described as crimes things which are not crimes; 4) they called not for objective evidence but for the mental conclusions of the witness; and, 5) they were hearsay.

Though of first impression in this state (but see O'Brien, infra), it is clear in the law that admitting testimony of an officer that he made no arrest following a collision is error. Danner v. Walters (Neb. 1951), 48 N.W.2d 635. Admitting such testimony is prejudicial error. Allen v. Ellis (Kan. 1963), 380 P.2d 408. In Ferreira v. General Motors Corporation (Hawaii App. 1983), 657 P.2d 1066, 1069, it is stated: "If evidence of an acquittal is inadmissible, a fortiori, evidence of the issuance or nonissuance of a traffic citation is likewise inadmissible." In Underwood v. Butler (Ga. App. 1983), 304 S.E.2d 729, 166 Ga. App. 527, Judge Birdsong noted:

> . . . That the officer did not issue appellant a criminal citation is no more relevant and admissible in a civil trial than it would be if the citation had been issued and the appellant found not guilty. The elements of proof in civil and criminal trials are decidedly different. (Citing a case.) Evidence that the officer did not issue a criminal citation to the appellant is generally irrelevant to the question of negligence in a civil

- 7 -

> trial. This rule is not changed by the fact that the officer had earlier, without objection by the appellant, been permitted to express his opinion as to her negligence.

304 S.E.2d at 731.

In this case, the plaintiff had moved in limine for an order preventing the patrolman from testifying as an expert since he was not listed by the defendant as an expert in pretrial discovery. The District Court denied this motion. The motion, however, was not denied until the afternoon of the first day of trial after the jury had been selected on March 30, 1987. Smith's counsel had taken the deposition of the patrolman on November 8, 1985. At that time, the patrolman testified that he did not consider himself an accident reconstruction expert, and that the opinions he was rendering in the deposition were from a criminal standpoint and not from a civil standpoint. Upon proper requests by Smith through interrogatories that Rorvik identify any expert witnesses, it became the duty of Rorvik to identify those witnesses, including the highway patrolman before trial. Sanders v. Mt. Haggin Livestock Company (1972), 160 Mont. 73, 500 P.2d 397; Smith v. Babcock (1971), 157 Mont. 81, 482 P.2d 1014. (A proper disclosure by Rorvik of the intention to call the patrolman as an expert on civil liability would have warned Smith and led to probable further motions to the court respecting the foundation for the patrolman's testimony as an expert.) In this case, the patrolman had spoken only to Rorvik, and at trial announced that he had based his opinion on what Rorvik had told him, plus what he had learned from other witnesses at the time of his investigation. However, no other eye witness at the scene could identify how the collision occurred. The only two witnesses to the actual circumstances of the collision were Rorvik on the one hand

and Smith on the other. If the information obtained by the patrolman through his investigation were insufficient for him to form an opinion as an expert, the lack of foundation to qualify him for his opinion would be an issue for determination. See Tacke v. Vermeer Mfg. (Mont. 1986), 713 P.2d 527, 43 St.Rep. 123. We have held that where the patrolman had inadequate information to form an opinion as to speed, that he should not be asked to testify thereon, O'Brien v. Great Northern Railway (1965), 145 Mont. 13, 400 P.2d 634:

> On direct and cross-examination the witness admitted that he was not an eye witness to the accident, having arrived some five minutes thereafter; that due to the impact, there was no way to determine the speed of the vehicle from the skidmarks on the highway; and, that he was not familiar with stopping distances in terms of speed. Shortly thereafter, in response to a question of whether there was any evidence of violation of the speed limit by the decedent, he replied, over appellant's objection, "I don't know whether I could judge and give a conclusive answer to that or not. In my own mind, I don't think the man was exceeding the speed limit." We think that the witness' answer was predicated on pure speculation and conjecture; the appellant's objection that the question was without proper foundation and called for a conclusion was valid and should have been sustained. In view of the fact that the witness was a highway patrolman testifying as an expert witness, the testimony given by him might have been accorded considerable weight by the jury, and, inasmuch as it tended to establish the freedom of the decedent from contributory negligence, it was unduly prejudicial to the appellant's case and therefore reversible error to admit it.

145 Mont. at 19-20, 400 P.2d at 638.

INSTRUCTIONS RELATING TO VEHICLE-PEDESTRIAN COLLISION

On the subject of the relative duties between a pedestrian on a highway and a driver approaching such a

pedestrian, the District Court gave the following instructions:

## INSTRUCTION NO. 18

A Montana statute provides a person operating or driving a vehicle of any character on a public highway of this state shall drive it in a careful and prudent manner, and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account the amount and character of traffic, weight of vehicle, grade and width of highway, condition of surface, and freedom of obstruction to view ahead, and he shall drive it so as not to unduly or unreasonable [sic] endanger the life, limb, property, or other rights of a person entitled to the use of the street or highway.

## INSTRUCTION NO. 19

A Montana statute provides that a person operating or driving a vehicle of any character on a public highway of this state shall drive it in a careful and prudent manner so as not to unduly or unreasonably endanger the life, limb, property, or other rights of a person entitled to the use of the street or highway.

## INSTRUCTION NO. 20

A Montana statute provides that every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

Notwithstanding the foregoing provision, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary.

## INSTRUCTION NO. 22

It is the duty of every person using a public street or highway, whether as a pedestrian or as a driver of a vehicle, to exercise ordinary care at all times to avoid placing himself or others in

- 10 -

danger and to use like care to avoid an accident from which an injury might result.

In addition, Smith's counsel requested the District Court to give the following instruction:

A Montana statute provides that a driver of a vehicle shall drive at an appropriate reduced speed when a special hazard exists with respect to pedestrians.

The proposed instruction is based upon § 61-8-303(5), MCA.

The District Court denied the proposed instruction on two grounds: (1) that the statute does not apply to pedestrians not in a crosswalk; and, (2) under the evidence of the case, the driver, prior to the accident, did not perceive any special hazard with respect to a pedestrian. However, the statute applies to all pedestrians, whether or not in a crosswalk, and the second reason given by the district judge was an issue for determination by the jury.

Although the other instructions given by the District Court relate to the several duties between a driver and a pedestrian on a public highway, none of those instructions told the jury that when a special hazard exists with respect to a pedestrian, the driver must reduce his speed. This was an important part of the theory of the plaintiff in this case. It is reversible error to refuse to instruct on an important part of a party's theory of a case. Northwestern Union Trust Company v. Worm (Mont. 1983), 663 P.2d 325, 327, 40 St.Rep. 758, 761.

INSTRUCTIONS RELATING TO THE DUTY OF PLACING
FLARES OR OTHER WARNINGS BY DISABLED VEHICLES

The District Court instructed the jury that Smith had a duty in this case to display two red flags upon the roadway in the lane of traffic occupied by his disabled vehicle, one at a distance of approximately 100 feet in advance of the

- 11 -

vehicle; and one at approximately a distance of 100 feet to the rear of the vehicle. Section 61-9-412(4), MCA. Smith objects to the giving of this instruction upon the ground that since the truck behind the disabled vehicle was exhibiting its flashing emergency lights, there was no need for the flags to be placed behind the disabled vehicle. With this, we cannot agree. There is a statutory duty regarding warning flags placed upon drivers of disabled vehicles left upon the travelled portion of the highway, and defendant had the same right for instructions on her theory of the case as did the plaintiff, discussed foregoing.

ARGUMENT OF THE EFFECT OF COMPARATIVE NEGLIGENCE

Smith on appeal argues that the District Court erred in refusing to permit arguments by counsel to the jury as to the legal effect of comparative negligence, when the negligence of the plaintiff exceeds that of the defendant. Section 27-1-702, MCA.

The District Court did rule and admonish counsel that the court did not want any argument to the jury relating to the effect of varying percentages of fault that the jury may find as between the plaintiff and the defendant. Defendant did object to this ruling, but the objection was more pro forma than substantive.

No instructions on comparative negligence in this case were offered by the plaintiff or the defendant, or given by the court. Whether we accept Rorvik's version--that Smith jumped into her path, or Smith's version--that he was struck as he came from behind the loader into the highway area--it is obvious that comparative negligence was an issue, and that on remand, instructions on comparative negligence should be given to the jury.

Although no instructions were given to the jury on comparative negligence in this case, special verdict forms

were submitted which indicated, by the composition of the questions, that if the jury found negligence on the part of Rorvik which contributed to plaintiff's injuries, it must thereafter determine whether Smith was contributorily negligent, and then make a comparison of their negligence. However, the jury in this case determined that although Rorvik was negligent, her negligence was not a proximate cause of the injuries sustained by Smith. It is difficult to understand under the instructions given by the court how Rorvik could have been negligent and yet that negligence should not be a proximate cause of the injuries sustained by Smith. It is quite evident that the jury was confused by the concept of proximate cause because it sent four questions on that subject out to the District Court during the time the jury was deliberating on the case.

On retrial, the District Court should instruct the jury on comparative negligence in order that the jury may understand the effect of the related questions in the special verdict, if the jury should come to that. The District Court may not restrict argument of counsel as to the effect of findings under comparative negligence. Under § 25-7-301(6), MCA, counsel in arguing the case to the jury, may argue and comment upon the law of the case as given in the instructions of the court, as well as the evidence of the case.

The judgment is reversed and the cause remanded for new trial.

_____
                    Justice

We Concur:

_____
        Chief Justice

- 13 -

_____
      Justices

Mr. Justice L. C. Gulbrandson, specially concurring.

I concur with the result expressed in the majority opinion but I do not concur with all that is stated therein. I specifically do not concur with the comments that the verbatim questions to the investigating patrolman, and his answers thereto, constitute prejudicial error against the plaintiff. Although the questions may have been objectionable, no objection was made by plaintiff's counsel to any of the questions. I would not treat the motion to strike the witness's answer as an objection to the question asked.

_____
      Justice

Mr. Chief Justice J. A. Turnage joins in the foregoing special concurrence of Justice L. C. Gulbrandson.

_____
      Chief Justice