No. 90-266

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

LEON CLINE,
      Plaintiff-Counterclaim Defendant and Appellant,
-vs-
LEO DURDEN,
      Defendant-Counterclaimant and Respondent.

_____

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable John McCarvel, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Joseph R. Marra,  Marra, Wenz, Johnson & Hopkins,
                Great Falls, Montana

                Daniel A. Boucher, Altman & Boucher, Havre, Montana

        For Respondent:

                Curtis G. Thompson, Jardine, Stephenson, Blewett &
                Weaver, Great Falls, Montana

                                _____

                                Submitted:   October 19, 1990

                                Decided:   December 27, 1990

Filed:

Justice John C. Sheehy delivered the Opinion of the Court.

Leon Cline appeals from a judgment entered in the District Court, Eighth Judicial District, Cascade County, awarding Leo (Tom) Durden $737,223. We affirm the District Court.

The issues raised by Cline are:

1. Whether the District Court erred in allowing Deputy Smrdel to give opinion testimony as to the cause of the accident.

2. Whether the District Court erred in allowing testimony and exhibits of Forest Service employees MacKay and Armstrong.

3. Whether the District Court erred in regard to introduction of Durden's military medical records and disability benefit application.

4. Whether the introduction of previously excluded medical conclusions constituted reversible error.

5. Whether the court erred in refusing several of Cline's instructions and special verdict form.

6. Whether the court erred in failing to rule on Cline's motion for a new trial.

Cline and Durden were involved in a head-on snowmobile collision on December 14, 1986. Cline and Durden were traveling in opposite directions on what is known as the Divide Road, near the summit of King's Hill Pass in the Little Belt Mountains. The trail at the area of the collision was wide enough to accommodate four snowmobiles. The orientation of the vehicles on impact and direction of travel by both parties was the central dispute at

2

trial. Cline contended that Durden was cutting across the trail from his left to right when the impact occurred. Durden claimed it was Cline who angled from his right to the left, encroaching upon Durden's right-of-way. Durden, Cline and his companion, Ron Harmon, who was traveling a short distance behind Cline when the accident occurred, were the only witnesses to the accident. However, Durden has no memory of what occurred due to head trauma he suffered.

Both parties were injured in the impact. Cline was taken by ambulance to the hospital; Durden was airlifted by helicopter due to his critical condition. The accident scene was thereafter cleared of debris by onlookers to minimize hazards to other snowmobilers. Due to the failing light, investigation of the accident scene by the Cascade County Sheriff's Department and U.S. Forest Service was not conducted until the next morning. Sheriff's Deputy Dan Smrdel prepared his report with the aid of a quick response unit representative, Dick Mosher, who had witnessed the accident scene shortly after the accident the previous evening, and Forest Service employees Armstrong and MacKay. From the remaining physical evidence, such as gasoline spill and small debris, and from Mosher's observations, the evening before, Smrdel prepared his report, which included diagrams, measurements and written explanation.

Cline commenced this action on December 9, 1988, claiming negligence on the part of Durden. On February 2, 1989, Durden answered and counterclaimed. Trial commenced on November 27, 1989

3

and was concluded on December 6, 1989. The jury returned a special verdict, concluding Cline to be solely negligent and awarded Durden $737,223 in damages. This appeal resulted.

Cline asserts the lower court erred in allowing Deputy Sheriff Dan Smrdel to testify as to the cause of the accident. Prior to trial, Cline made a motion in limine to exclude any testimony from Smrdel as to the cause of the collision, as well as an accident report and diagram of the scene prepared by Smrdel the morning after the accident. Cline stated that Smrdel lacked the adequate training in accident reconstruction and did not conduct a thorough enough investigation to render an opinion as to cause.

At the pretrial conference, the court stated it was inclined to grant Cline's motion in limine to exclude Deputy Smrdel's testimony, based upon opposing counsel's failure to file a reply brief as required under Uniform District Court Rule No. 2. Thereafter, Durden filed a motion to reconsider on the grounds that the failure to file a reply brief had simply been an oversight.

Just prior to opening statements, the court, in camera, stated it would reserve a ruling on the admissability of opinion testimony by Deputy Smrdel. Over the objections of counsel for Cline, the court thereafter allowed Smrdel to render an opinion as to the cause of the accident, stating that:

> . . . [H]e's laid foundation for his qualifications. He went to basic training school at the Montana Law Academy and went back there for a two-week course put on by the Northwest Traffic Institute, and then went back on other occasions.

4

Neither Cline's claim of surprise nor insufficient foundation has merit. Being trained in accident reconstruction, Deputy Smrdel was qualified to give his opinion of the accident's cause. Under the Montana Rules of Evidence, the trial court is given wide latitude in determining whether to admit opinion testimony of investigative officers. Simonson v. White (1986), 220 Mont. 14, 713 P.2d 983. Leeway is allowed in such instances, and provided that the cross-examiner is given adequate opportunity to elicit any assumptions or facts underlying the expert's opinion, the weight to be given the testimony is for the trier of fact to determine. Goodnough v. State (1982), 199 Mont. 9, 647 P.2d 364. Given the foundation cited by the court, the early inclusion of Deputy Smrdel as an expert witness, and the availability to Cline of all reports and diagrams prepared by Smrdel, we find no error in allowing his opinion testimony.

Error is also asserted as to the testimony of Douglas MacKay and James Armstrong. Rangers MacKay and Armstrong were stationed nearby at the King's Hill Ranger District Station, and accompanied Deputy Smrdel and ski patrolman Dick Mosher to the accident scene the next morning. With the aid of Mosher, who had responded to the accident the previous evening, the parties determined the point of impact and the final resting spots of Cline and Durden. Relying upon Mosher's observations and evidence such as snowmobile debris and blood, Armstrong took photographs depicting the impact area and the resting positions of Cline and Durden. In addition, MacKay prepared a diagram based on observations and measurements.

5

Cline contends the court erred in allowing the testimony and exhibits of Armstrong and MacKay. However, counsel for Cline did not object to either the photographs or the diagram when offered into evidence. Investigative reports prepared by Armstrong and MacKay were never offered nor admitted into evidence. MacKay was asked to refer to his report, first on cross-examination by Cline's counsel, and then on redirect by Durden's counsel. On redirect, the following dialogue occurred:

> Q: And, then, sir, directing your attention to paragraph five of your report, would you please tell this jury what you thought, or felt to be the cause of this accident? A. Once again, this is inconclusive and speculative, but it would appear Mr. Cline's machine and Mr. Cline failed to yield the right-of-way to Mr. Durden.
>
> Q: And upon what do you base that? A. The location of the impact, as you can tell from the northern edge of the road there is only four to five feet from the center mass of the impact to the edge of the road, and, indeed Mr. Durden was going in [a westerly] direction, that should have been his lane of traffic. And Mr. Cline should have been on the opposite side of the road going east, or the southern part of the road.

After the jury had been impanelled, counsel had met in chambers to discuss proposed amendments to the pretrial order. Counsel for Durden wished to present the photographs, diagrams and reports of MacKay and Armstrong, all recently discovered. Counsel for Cline objected on the basis of timeliness and inadmissable opinion testimony. After discussion, Cline's counsel agreed to stipulate to the photographs, but renewed objections to the written reports, due to the unsubstantiated opinions within. The court reserved any ruling upon the reports.

6

Clearly, an opinion as to the cause of the accident was elicited of and rendered by Durden's own witness. No ruling was made by the court, nor was any objection renewed. We find that Cline's objection in chambers was sufficient to preserve it for purpose of review on appeal. However, we find no error in the testimony, as counsel for Cline was first to delve into the subject matter of the report on cross-examination:

Q: Mr. MacKay, you have got your case report in front of you? A: Yes, I do.

Q: Okay. And I believe that report states, does it not, when the investigation was initiated the morning following the accident, both snowmobiles had been removed from the scene; is that correct? A: That's correct.

Q: And due to this removal investigate results are inconclusive and speculative; is that correct? A: That is also correct.

Q: And you go on and say, however, assumptions can be drawn from debris remaining and statements offered at the site by Richard Mosher, a National Ski Patrol member who administered first aid shortly after the accident? A: Yes.

. . .

Q: And would it be a fair statement to say that your report is based purely on what you saw at the scene the day after, and what Mosher told you? A: That would be correct.

Q: And you don't profess to contend that this is accurate insofar as what happened at the accident. You are not an accident reconstruction person? A: No, not per se.

Rule 106, Montana Rules of Evidence, states in part:

(a) When part of an act, declaration, conversation, writing or recorded statement or series thereof is introduced by a party:

* * * *

7

(2) an adverse party may inquire into or introduce any other part of such item of evidence or series thereof.

By inquiring into MacKay's report for the first time on cross-examination, counsel for Cline effectively overcame his own objection to matters contained therein and opened the door for further inquiry on redirect. The court has wide discretion in determining the scope and extent of re-examination as to the new matters brought out on cross-examination. State v. Heaston (1939), 109 Mont. 303, 316, 97 P.2d 330. "You may not parry with sharpened blade in cross and expect only a sheathed blade in return." State v. Board (1959), 135 Mont. 139, 145, 337 P.2d 924.

Cline next contends the court erred in several aspects regarding the admission of Durden's military disability benefits application and supporting military medical records. Cline sought the introduction of the disability benefit application and medical records, presumably to contend that some of Durden's maladies predated the snowmobiling accident. Durden filed a motion in limine to preclude any presentation of evidence of the application for disability benefits, which was granted by the court. However, the application was later admitted by Durden during his case in chief.

Cline contends error in the initial exclusion, and the later admittance of the application without the supporting medical records during Durden's case in chief. Cline contends the late admittance of the application precluded Cline from addressing it during opening statement. If any error existed from the early exclusion of the application, its effect was negligible, as Cline

8

was allowed full opportunity to cross-examine Durden regarding the application. Cline recalled his economic expert and elicited opinions from him based on the application. That no further mention was made of the application, including closing argument, would suggest that it was not considered of crucial import to Cline's case.

Cline contends it was error to exclude Durden's military medical records, which were referred to in the disability benefits application. Cline cites Rule 106, M.R.Evid., the "completeness rule," as the grounds requiring their inclusion. We disagree with Cline's contention. Rule 106 does not mandate the inclusion of related evidence. The rationale behind the inclusion of supplementary evidence is that it is allowed if it is needed to make the primary evidence understandable. State v. Sheriff (1980), 190 Mont. 131, 619 P.2d 181. The application was clear on its face in this instance, particularly after witnesses for Durden explained its purpose, and Cline was afforded the chance to cross examine. Further, the rule states that the "adverse party may inquire into or introduce" any other part of the writing. Its inclusion is not mandatory, but is an option granted the adverse party. Cline made no attempt to introduce the military records after the application was introduced. He cannot now predicate error on his own failure.

Cline next contends the court erroneously allowed hearsay testimony by Durden's expert witness, psychologist Edward Shubat. Cline states that Shubat was "primed" by Durden to circumvent an earlier order disallowing the medical conclusions of a number of

medical specialists by testifying as to their conclusions. This contention lacks merit, as it was Cline who elicited the limited testimony on that point during cross examination of Shubat. Cline cannot create error for his own benefit on appeal.

Cline contends the court erred in refusing plaintiff's instruction no. 3, which stated:

> Evidence of any oral admissions, claimed to have been made outside of court by any party to this case, ought to be viewed with caution.

This instruction comes from the old Montana Jury Instruction Guide, which has been superseded by the Montana Pattern Instructions. Cline sought the instruction in light of a statement used to impeach Cline's trial contention as to positions of the snowmobiles just prior to the accident. Cline had given the statement by telephone to an insurance adjuster while still hospitalized. Cline did not deny the statement, but claimed no memory of it due to heavy sedation. Cline contends that in such a condition, he was susceptible to suggestion and that the jury should have been informed by instruction to the unreliability of the statement.

We cannot agree with Cline's contention. No evidence was offered to show he was sedated when the statement was made. The jury was properly instructed that it, as the trier of fact, had the responsibility of weighing all evidence. This was sufficient where there was a prior inconsistent statement which Cline was afforded the opportunity to deny or explain. Rule 613(b), M.R.Evid.

10

Cline next contends error in the denial of his instructions nos. 17, 25 and 60, all detailing applicable standards of care. Nos. 17 and 60 both referred to standard of care in operation of vehicles in light of surrounding circumstances, including situations of "emergency calling for quick action." The court declined the instruction, stating:

> So when the Court starts calling [the position of the vehicles prior to the accident] an emergency [situation], then it's drawing conclusions of fact, and I think that's for the jury to decide, whether or not there was an emergency situation here. For me to call it an emergency seems to be commenting on the evidence.

We hold the court properly excluded the instruction no. 17 and no. 60, as they made reference to an "emergency situation," and which was not conclusively proven to exist, but was a question of fact to determined solely by the jury. Section 26-1-202, MCA. "Sudden emergency" instructions are looked upon with disfavor in Montana. Simonson v. White (1986), 220 Mont. 14, 713 P.2d 983; Ewing v. Esterholt (1984), 210 Mont. 367, 684 P.2d 1053.

Plaintiff's proposed instruction no. 25 stated:

> Ordinary care is not an absolute term, but a relative one. That is to say, in deciding whether ordinary care was exercised in a given case, the conduct in question must be considered in the light of all the surrounding circumstances, as shown by the evidence.

Cline contends error in the refusal of that instruction, particularly in light of the court's refusal to give proposed instruction no. 17 and Cline's theory of the case—that he met Durden on the wrong side of the trail and was forced to take evasive action.

11

We hold that court's instructions nos. 10 and 11 adequately addressed the notions of ordinary and reasonable care commensurate with the circumstances. Cline can show no prejudice in the court's refusal of his proposed instruction no. 25, as other instructions adequately covered the point. Funk v. Robbin (1984), 212 Mont. 437, 689 P.2d 1215.

Cline next contends error in the refusal of his proposed instruction no. 19, which gave a mathematical formula by which a vehicle's speed may determine its distance traveled over time. Cline claims it was error to refuse the instruction, as it would have helped resolve conflicts in the testimony of the opposing accident reconstruction experts.

We find no error in the court's refusal of the instruction, as it would merely have added another factor to consider, and one not particularly helpful to the layman in determining standards for perception/reaction time to which the experts testified. It is within the district court's discretion to decide how to instruct the jury, taking into account the theories of the contending parties, and we will not overturn except for abuse of that discretion. State v. Barnes (1988), 232 Mont. 405, 758 P.2d 264.

Cline next contends the court erred in refusing his instruction as to fixing damages for loss of future earnings. Again, we find no error, as the court's instruction no. 20 more than adequately addressed the subject.

Cline next contends it was error for the court to give Durden's form of special verdict in lieu of Cline's. Cline states

12

the jury became confused, as shown by the question put to the court during deliberation whether negligence must total 100 percent. A review of both special verdict versions shows they are strikingly similar, both requesting a determination of apportionable negligence. Cline cannot show that the offered version was in any way inadequate, or that the jury's final determination was in any way subject to confusion. We find no error in the given special verdict form.

Cline's final contention of error is predicated on the court's failure or refusal to rule on his motion for new trial. However, it is not uncommon practice for the district court to deny such a motion by failing to rule within the 45-day limit set out in Rule 59(d), M.R.Civ.P. Such was the case here, and no error may be assigned to the court's denial.

Affirmed.

_John C. Sheehy_
Justice

We Concur:

_F. A. Turnage_
Chief Justice

_Diane G. Barz_

_John Conway Harrison_

_R. C. McDonough_
Justices