No. 91-202

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1991**

BRUCE R. CAMPBELL, as the father of CASSIE CAMPBELL, a minor; and CASSIE CAMPBELL, a minor by and through BRUCE R. CAMPBELL, her next friend,

      Plaintiffs and Appellants,

  -vs-

JEFFREY DEAN JOHNSON,

      Defendant and Respondent.

**FILED**

DEC 12 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Seventh Judicial District,
In and for the County of Richland,
The Honorable Richard G. Phillips, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

           Douglas C. Allen, Attorney at Law, Great Falls, Montana; Douglas D. Howard, Heard & Howard, Columbus, Montana.

      For Respondent:

           Dane C. Schofield, Peterson & Schofield, Billings, Montana.


Submitted on briefs:  August 15, **1991**

Decided:  December 12, 1991

Filed:

_____
              Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff, Cassie Campbell (Campbell) brought a negligence action against the defendant, Jeffrey Dean Johnson (Johnson) as a result of an auto-pedestrian accident. A jury in the Seventh Judicial District Court, Richland County, Montana found that Johnson was not negligent. Campbell appeals. We affirm.

The following issues are brought by the plaintiff on appeal:

1. Was it error for the investigating officer to offer opinion testimony regarding the cause of the accident?

2. Was it reversible error for the investigating officer to offer opinion testimony regarding the unsafe behavior of another driver?

On February 28, 1987, while Campbell was crossing in the middle of the 400 block of South Central Avenue, in Sidney, Montana, Campbell and Johnson's vehicle collided. Central Avenue is a four lane street with a parking lane on both sides running north and south. The 400 block on Central Avenue has a traffic light at the intersection to the south, and a crosswalk at the intersection to the north.

Just prior to the accident Johnson was driving his car in the left southbound lane of Central Avenue. Although Johnson saw Campbell by the curb waiting to cross the street, he looked away before she stepped into the street. Campbell stated that she did not see Johnson's car before stepping into the street. Campbell safely crossed the right southbound lane, then stepped into the left southbound lane and into the right front fender of Johnson's

2

car.  Campbell was twelve years old at the time of the accident.

The investigating officer, Dennis Palmer (Palmer) of the Sidney police department, testified that when he arrived at the scene, Johnson had moved his car and Campbell was lying in the street in the right southbound traffic lane about fifteen feet from the curb.  Palmer testified that no skid marks appeared on the roadway, indicating that Johnson did not apply his brakes. Similarly, he found no scuff marks from the collision.  Palmer examined the bent radio antenna, the windshield damage, the position of dents on Johnson's vehicle as well as the right front fender where accumulated road film and dust were disturbed.  Palmer measured Campbell's position in the street and the placement of her injuries.  From this investigation Palmer testified as to his conclusion that the point of contact was the right front fender of Johnson's vehicle.

Palmer also obtained statements from Campbell, Johnson and several eye witnesses to the accident.  Palmer testified that the witness statements were consistent with his conclusion that Campbell impacted with the right front fender of the vehicle.  An eye witness to the accident, David Reidle (Reidle), was driving in the left northbound lane.  According to his statement, Reidle observed Campbell waiting to cross the street and stopped his vehicle in the middle of the block to allow Campbell to cross.

At the trial, over objection of the plaintiff, Palmer testified that in his opinion "the accident was caused by the sudden movement of the pedestrian in the middle of the block out

into the traveled portion of the road."  This testimony is the basis for the first claimed error.  Palmer also testified over objection that in his opinion, it was unsafe for Reidle to stop his vehicle in the middle of the block.  "It leads people to believe that traffic is going to stop for them in the middle of the block."  This testimony is the claimed basis for the second error.

I

Was it error for the investigating officer to offer opinion testimony regarding the cause of the accident?

Appellant contends that Palmer's opinion testimony regarding the cause of the accident was inadmissible under Smith v. Rorvik (1988), 231 Mont. 85, 751 P.2d 1053.  Smith involved an auto-pedestrian accident where the defendant failed to list the investigating officer as an expert prior to trial.  In that case, this Court held that it was error to allow the officer to offer his opinion as to the negligence of one of the parties.

Clearly, this case is distinguishable from Smith.  Here, Palmer's testimony concerned the cause of the accident, not the negligence of the parties.  Further in this case, Johnson listed Palmer as an expert prior to trial.  In Smith this Court concluded that because the officer was not listed as an expert prior to trial, the plaintiff lacked adequate opportunity to challenge the basis of the officer's opinion.

> Upon proper requests by Smith through interrogatories that Rorvik identify any expert witnesses, it became the duty of Rorvik to identify those witnesses, including the highway patrolman before trial.  (A proper disclosure by Rorvik of the intention to call the patrolman as an expert on civil liability would have warned Smith and led

**4**

> to probable further motions to the court respecting the foundation for the patrolman's testimony as an expert.) ... If the information obtained by the patrolman through his investigation were insufficient for him to form an opinion as an expert, the lack of foundation to qualify him for his opinion would be an issue for determination. [Citations omitted]. (Emphasis supplied.)

Smith, 751 P.2d at 1056.

We do not conclude that Palmer is barred from testifying under Smith. Here Johnson identified Palmer as an expert prior to trial and Campbell twice challenged the foundation of Palmer's opinion by requesting the court exclude Palmer's testimony regarding the cause of the accident. Campbell engaged in extended cross-examination of witness Palmer. In denying Campbell's pretrial motion in limine and her objection at trial, the trial court found that Palmer had sufficient information to testify as an expert regarding the cause of the accident.

We agree with the trial court's holding. Palmer investigated the accident by measuring Campbell's position in the roadway, examining Campbell's injuries as well as the antenna, windshield, dents, and the places on Johnson's fender where dust had been disturbed. In addition, he found no skid marks to indicate that Johnson applied his brakes prior to impact. After examining the physical evidence and obtaining witness statements, Palmer determined Campbell's point of impact with the car and concluded that Campbell caused the accident by colliding with the right front fender of Johnson's car.

Defendant asserts that this Court should defer to the ruling of the trial court which allowed the opinion testimony, citing

5

Cline v. Durden (1990), 246 Mont. 154, 803 P.2d 1077. <u>Cline</u>
stated:

> ...Under the Montana Rules of Evidence, <u>the trial court is given wide latitude in determining whether to admit opinion testimony of investigative officers.</u> Leeway is allowed in such instances, and ~~provided that the cross-examiner is given adequate opportunity to elicit any assumptions or facts underlying the expert's opinion~~, the weight to be given the testimony is for the trier of fact to determine. [Citations omitted.]  (Emphasis supplied.)

~~Cline~~, 803 P.2d at 1080.

Under <u>Cline</u> the trial court here was given wide latitude in determining whether to admit opinion evidence of the investigative officer.  Palmer testified that he studied accident investigation during basic training at the Montana Law Enforcement Academy. After six years as a law enforcement officer, Palmer investigated approximately 200 accidents prior to this accident.  The evidence obtained by witness Palmer during his investigation, coupled with his experience in accident investigation, provided a sufficient basis for the court to determine that Palmer had a proper foundation to testify.  As in <u>Cline</u>, the record indicates that Campbell cross-examined Palmer to elicit the assumptions and facts underlying his opinion testimony.  We conclude the District Court properly admitted the opinion testimony.  We hold that it was not error to allow the investigating officer to offer opinion testimony regarding the cause of the accident.

We point out that in the present case, Campbell filed the appeal based on a partial trial transcript which contained only the testimony before the District Court on the part of Officer Palmer. It did not contain any of the testimony of other witnesses.  The

6

record does include minute entries made by the clerk which contain a summary of the testimony of some of the witnesses. As a result we are not able to compare the testimony on the part of other witnesses to the transcribed testimony of Officer Palmer.

## II

Was it reversible error for the investigating officer to offer opinion testimony regarding the unsafe behavior of a non-party driver?

Appellant contends Palmer's testimony that it was unsafe for Mr. Reidle to stop his vehicle in the middle of the block to allow Campbell to cross was irrelevant, conclusory and prejudicial to Campbell's case. Johnson contends that this argument is speculative and urges this Court to uphold the findings of the District Court when it stated:

> While the conduct of Mr. Reidle does not appear to have anything to do with the accident itself, Plaintiffs speculate that any comment concerning the propriety of his [Reidle's] actions may have been given great weight by the jury. However, there is nothing to indicate that the jury accorded any significant weight to such comment. To grant a new trial only on the basis of this argument would be speculation on the part of the Court.

We conclude that the District Court correctly characterized the plaintiff's argument as speculative and that the testimony regarding the propriety of the conduct of a non-party witness did not prejudice Campbell's case. Campbell failed to offer any evidence tending to show that the testimony was significant.

We hold that it was not reversible error for the trial court to allow the officer to offer opinion testimony on the propriety of Reidle's conduct.

**Affirmed.**

_____
Justice

**We Concur:**

_____
Chief Justice

_____

_____

_____

_____
**Justices**

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

This Court has gotten to the point where it automatically admits opinion testimony of law enforcement personnel in auto accident cases without adequate scrutiny of whether the testimony serves any of the purposes for which opinion testimony is normally allowed.

This is a simple case. Cassie Campbell was attempting to cross the highway when she was either struck by or ran into the vehicle being driven by the defendant. The issue is whether she negligently ran out into the street, or whether the defendant was negligent by failing to observe her and have his vehicle under sufficient control so that he could avoid her. If both were negligent, the issue was then how their negligence compared.

Including the parties, eight people witnessed the accident. The investigating officer, Dennis Palmer, was not one of them.

Some or all of these witnesses testified before the jury regarding their direct observations of how the accident occurred. Officer Palmer's investigation and subsequent opinion based on that investigation added nothing to the direct observations of these witnesses. As will be shown, his opinion was based primarily on what he was told by the same witnesses who testified at trial.

When Officer Palmer arrived at the scene of the accident, the victim was lying in the street. The vehicle with which she collided had been moved and was parked further to the south. He

9

marked her location on the street and called in another officer who took photographs of the vehicle. He also recorded the names of the people who had witnessed the accident and later took statements from each of them.

Officer Palmer testified that normally if there are skid marks at an accident scene he can determine speed and direction from observing and measuring them. However, he could not find any skid marks at this accident scene.

He testified that he normally determines the point of impact from debris left on the road, but at this accident scene he found neither scuff marks nor debris in the vicinity where the accident occurred. Therefore, he was unable to determine a point of impact.

He examined the defendant's automobile for damage, and based upon the damage that he observed, he determined the point where the victim's body collided with the defendant's vehicle. However, what he observed added nothing to what he had already been told by the witnesses to the accident. Furthermore, he could not tell from looking at the car whether the victim stepped into the car, ran into the car, or was merely standing in the street when she was struck by the car.

His entire investigation consisted of interviewing witnesses, observing the vehicle, looking for skid marks and debris, and observing the whereabouts of the victim when he arrived. However, it was clear that the only part of that investigation which in any

way enlightened him about how the accident occurred, was his interview of the witnesses.

Although he had training and qualifications which would have enabled him to estimate speed and identify a point of impact if sufficient physical evidence had been available, none of that evidence was available. There was nothing in his background or training which enabled him to draw any better conclusion from having interviewed the witnesses than the jury was able to draw from listening to those same witnesses. In spite of these facts and this lack of foundation, he was allowed to express the following opinion during the trial:

> It's my opinion that the accident was caused by the sudden movement of the pedestrian in the middle of the block out into the traveled portion of the road.

Whether Officer Palmer was qualified as an expert in this case requires an analysis of more than whether he was a law enforcement person who investigated an accident. It requires an analysis of our rules regarding opinion evidence and how they apply to the facts in this case. Rule 702, M.R.Evid., controls. It provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

There was no scientific, technical, or other specialized knowledge which formed the basis for Officer Palmer's opinion. His

11

opinion was based exclusively on what he was told by the witnesses he interviewed.

This case is similar to *Ployhar v. Board of Trustees* (1980), 187 Mont. 363, 609 P.2d 1226. In that case, the victim of the accident was a student at Missoula Technical Center and enrolled in a heavy equipment operation class. At the time of the accident, he was working behind a Caterpillar being operated by another student when the Caterpillar reversed direction and ran over and crushed him. The victim's family sued the school district for dangerous supervision and operation of the class.

One of the instructors at the school was called as a witness at trial, and on cross-examination was allowed to give his opinion regarding the cause of the accident. We held that such opinion testimony was inappropriate and a basis for a new trial. In that opinion, we reached the following conclusion which is relevant to this case:

> Simms gave his opinion as to the proximate cause of the accident. Opinion evidence concerning the cause of an accident is admissible only if the subject matter is beyond the ordinary understanding of the jury. See *Ziegler v. Crofoot* (1973), 213 Kan. 480, 516 P.2d 954. The cause of the accident must be sufficiently complex to require explanation. See *McGuire v. Nelson* (1975), 167 Mont. 188, 536 P.2d 767; *Massoni v. State Highway Commission* (1974), 214 Kan. 844, 522 P.2d 973, 979. See also *Dobkowski v. Lowe's, Inc.* (Ill.C.A. 1974), 20 Ill.App.3d 275, 314 N.E.2d 623. Here, there was no need for such testimony. The accident was relatively simple. It involved a single tractor, and the actions of only two individuals, the driver of the tractor and the accident victim. At trial, an eyewitness gave his description of the accident, and other witnesses

12

testified concerning the actions of the tractor driver and the decedent. This evidence appears to be sufficient to allow the jury to make an independent judgment as to the ultimate cause of the accident. Thus, we conclude there was no abuse of discretion in determining that opinion testimony was not needed here.

The Board contends that Simms' testimony was not prejudicial to the plaintiffs' case. However, the extent to which the deceased's own actions caused the accident was obviously a crucial part of the Board's defense. No other witnesses gave their opinion as to the cause of the accident. These circumstances support the trial court's conclusion that Simms' testimony was manifestly prejudicial to the plaintiff's case.

*Ployhar*, 609 P.2d at 1228.

We excluded opinion evidence for similar reasons in *State v. Howard* (1981), 195 Mont. 400, 637 P.2d 15. In that case, the defendant was charged with attempted homicide and other crimes of violence against the victim. The physician who attended the victim in the emergency room at the hospital testified about strangulation marks on her neck and other bruises and damage that he observed on her body. In addition, he was allowed to express his opinion that the force which caused the marks he observed was intended to cause her death. We held that whether he could express such an opinion depended on Rule 702 set forth above, and we explained the test for admissibility under Rule 702 as follows:

Stated another way, the test is:

". . . whether the subject is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness, or whether the matter is sufficiently beyond common experience that the opinion of an expert would

13

> assist the trier of fact." *State* v. *Campbell*
> (1965), 146 Mont. 251, 258, 405 P.2d 978, 983.
>
> Dr. Elliott inferred from the nature of the injuries that the person who inflicted them did so with an intent to murder. We find that under the circumstances of this case, the jury was as qualified as the doctor to draw an inference from the circumstantial evidence as to intent, and therefore the doctor's opinion on intent was inadmissible under Rule 702, Montana Rules of Evidence.

*Howard.* 637 P.2d at 17.

I find that both of these cases control the outcome in this case. In this case, the jury was as qualified as Officer Palmer to listen to the observations of the eyewitnesses to this accident and determine whether the accident occurred because of the victim's sudden movement into the street or because the defendant failed to be sufficiently alert to avoid the victim when she crossed the street. The only things that Officer Palmer knew in addition to what he was told by those witnesses were the victim's location when he arrived at the scene and the location of damage to the defendant's vehicle. However, none of that information contributed to the opinion that he was allowed to express regarding the cause of this accident.

The majority relies on *Cline v. Durden* (1990), 246 Mont. 154, 803 P.2d 1077, as authority for the admission of Officer Palmer's testimony. However, the only similarity between that case and this case is that there was an opinion offered by a law enforcement officer. That case did not involve a pedestrian-vehicle collision on the main street through town in broad daylight with eight direct

14

witnesses available to testify. The *Cline* case involved a head-on snowmobile collision in the mountains. The only two competent witnesses were the plaintiff and his companion. The defendant had no recollection of what happened due to the trauma that he suffered. The only issue involved the orientation of the vehicles and their direction of travel at the point of impact. The investigating officer was allowed to express an opinion on that issue based upon physical evidence, including debris and spilled gasoline found at the scene. The deputy's opinion in that case was based directly upon his training in accident reconstruction, and not on what he was told by any witness who testified at trial.

What this Court has gotten in the habit of doing is simply looking to see whether law enforcement personnel have training in accident investigation and reconstruction, and then based on that training, concluding that they are automatically qualified to express an opinion at trial without looking to see if that opinion is based upon the officer's training or experience. For other examples of such non sequitur analysis, see *Foreman v. Minnie* (1984), 211 Mont. **441, 689** P.2d **1210,** and *Scofield v. Estate of Wood* (1984), **211** Mont. **59, 683** P.2d **1300.** This kind of analysis is inconsistent with our rules for all other expert witnesses and should be corrected.

The only thing that Officer Palmer added to this case beyond what the eyewitnesses had to offer was his opinion and his uniform. That was unfair.  I would reverse.

_____
                J stice

I concur in the foregoing dissent of Justice Trieweiler.

_____
                Justice

16

December 12, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Douglas C. Allen
Attorney at Law
P.O. Box 2886
Great Falls, MT  59403

Douglas D. Howard
Heard & Howard
P.O. Box 926
Columbus, MT  59019

Dane C. Schofield
Peterson & Schofield
2906 Third Ave. No.
Billings, MT  59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
       Deputy