No. 95-216

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

LESLIE McQUISTON,

      Defendant and Appellant.

FILED

AUG 0 6 1996

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank Davis, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          William F. Hooks, State Appellate Defender,
(argued) Helena, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
Elizabeth L. Griffing, Ass't Attorney General,
(argued) Helena Montana

          Thomas R. Scott, County Attorney, Dillon, Montana


Heard:    May 14, 1996
Submitted:    May 31, 1996
Decided:    August 6, 1996

Filed:

_____
Clerk

Justice Charles E. Erdmann delivered the Opinion of the Court.

Appellant Leslie McQuiston appeals from the judgment and sentence entered by the Fifth Judicial District Court, Beaverhead County, convicting him of sexual intercourse without consent and incest. We affirm.

The issues on appeal are as follows:

1. Did the District Court err in allowing testimony regarding other acts committed by McQuiston?

2. Do McQuiston's convictions for sexual intercourse without consent and incest violate double jeopardy protections?

3. Did the District Court err in sentencing McQuiston?

FACTS

In February 1989, Heidi McQuiston (Heidi) was nineteen years old. She lived in a mobile home in Dillon with her two children, her natural mother, Jackie Jenkins (Jackie), her brother and her adoptive father, Leslie McQuiston (McQuiston).

Heidi testified that on or about February 10, 1989, McQuiston came into the kitchen where she was standing and asked her to go to his bedroom because he needed to talk to her. Neither her mother nor her brother were home. Heidi followed McQuiston into the bedroom where he shut the door behind her. McQuiston then told Heidi to take her clothes off and told her he would beat her if she refused. Heidi took her clothes off and McQuiston told her to get on the bed. He then disrobed himself and engaged in sexual intercourse with her.

2

On January 3, 1994, McQuiston was charged by Information in the Fifth Judicial District Court, Beaverhead County, with one count of sexual intercourse without consent, a felony, pursuant to § 45-5-503, MCA, and in the alternative, with one count of incest, a felony, pursuant to § 45-5-507, MCA. In a supporting affidavit, the County Attorney stated that Heidi had given birth to three children and that McQuiston was the putative father of all three. Results of paternity tests indicated over a ninety-nine percent probability that McQuiston was the father of Heidi's three children.

McQuiston moved to dismiss the charge of sexual intercourse without consent claiming that only the incest statute applied to him. The District Court denied the motion and the State then filed an amended Information indicating that the charges of sexual intercourse without consent and incest were charged separately and independently, not alternatively.

A jury trial was conducted on October 6 and 7, 1994. After Heidi testified about the specific incident for which McQuiston was charged, a sidebar discussion took place off the record. The District Court then admonished the jury that the testimony they were about to receive concerned other acts by the defendant and that the evidence was not being admitted to prove the character of the defendant. The court told the jurors that McQuiston was not being tried for other crimes, wrongs, or acts and that they were to consider the testimony for limited purposes.

3

After the court admonished the jury, Heidi testified that the February 10, 1989, incident was not the first time that McQuiston had had sexual intercourse with her. She testified that McQuiston had begun sexual advances toward her when she was nine years old. Heidi stated that when she reached the age of fourteen she discovered through movies shown at health class that what her father was doing to her was not normal. Thereafter she began to resist McQuiston's advances, but when she resisted her father, she was beaten.

Heidi testified that she was beaten so many times for resisting McQuiston that she could not remember them all and she could not estimate how many incidents of sexual intercourse had occurred. She also testified there were times when her father would beat her and then proceed to have sex with her. The incidents of intercourse occurred about two or three times a week, but gradually decreased to the point that in February, 1989, McQuiston was having sex with Heidi approximately once a week. The February 10, 1989, incident was the last time Heidi had sexual contact with her father.

On Heidi's cross-examination, defense counsel asked her specific questions about the beatings and elicited testimony concerning an incident in Salem, Oregon, in the early 1980s when McQuiston had hit Heidi for calling him a pig. Heidi's mother confirmed the Oregon beating. When Jackie was asked by the State to describe the facts surrounding the beating, she said that when

4

Heidi brought McQuiston a cup of coffee he belched and she called him a pig. Jackie testified that McQuiston "went crazy" and beat Heidi. Defense counsel did not object to any of Jackie's testimony concerning the Oregon beating. Jackie also testified that there were at least twenty times when she returned home from work and Heidi would have a black eye or a fat lip.

McQuiston testified that he had hit Heidi only twice and denied any sexual contact between himself and Heidi. He stated that he believed he had treated Heidi "like a daughter" and that when he had hit her, it was "corrective." McQuiston testified that he first discovered that Heidi was pregnant when he was released from jail in Kalispell. He claimed that Heidi, Jackie, and her brother had accused him of the crimes because they were jealous of his current financial status. McQuiston testified that he was remarried, had two children, had paid for his vehicles, made about $65 a day and had money in his pocket. He testified on direct examination that he was "way better off" than he had been when he was married to Jackie.

On cross-examination, the County Attorney asked McQuiston about an existing court-ordered restitution requirement in an unrelated action. McQuiston testified that he had been ordered to pay $10,100 in increments of $100 per month and admitted he had not made any of the monthly payments for a year. When asked if he had enough money to pay the restitution payments, he stated he did but that he had spent the money on other items. Defense counsel did

5

not object to any of the testimony regarding the restitution requirement and there was no evidence submitted as to the underlying crime for which restitution had been ordered.

The jury found McQuiston guilty of sexual intercourse without consent and incest. This appeal followed.

ISSUE 1

Did the District Court err in allowing testimony regarding other acts committed by McQuiston?

McQuiston argues that the State exceeded the scope of its pretrial notice regarding evidence of other acts which it intended to introduce at trial. McQuiston contends that when the State offered evidence concerning the Oregon beating incident and the restitution requirement, it exceeded the scope of its intended use of alleged other acts. McQuiston argues that these two past acts were unrelated to the crime for which he was charged and that the prejudicial impact of admitting them far outweighed any probative value they may have had. Furthermore, McQuiston relies on State v. Matt (1991), 249 Mont. 136, 814 P.2d 52, and State v. Just (1979), 184 Mont. 262, 602 P.2d 957, to argue that the District Court did not properly admonish the jury prior to admitting the evidence.

The State argues that the Oregon beating incident was properly admitted as going to the *res gestae* of the rape and incest charges. The State claims that even though the Oregon beating did not involve sexual contact, it was sufficiently similar to the other beatings that Heidi had received and therefore was properly

6

admitted to show the long history of McQuiston's intimidation and domination of Heidi. The State further notes that since the testimony was initially elicited by defense counsel, no error should be charged to the District Court or to the State for its admission.

The State argues that the purpose of introducing the evidence concerning the restitution requirement was to inquire into McQuiston's financial status in an effort to rebut or impeach his prior testimony that he was financially well off. The State maintains that the District Court properly admonished the jury before Heidi testified concerning the many years of prior abuse and that the court was not required to admonish the jury again prior to receiving testimony concerning the Oregon beating and the Kalispell restitution order.

We have stated that district courts have broad discretion to determine whether or not evidence is relevant and admissible, and absent a showing of an abuse of discretion, the court's determination will not be overturned. State v. Pace (1995), 272 Mont. 464, 467, 901 P.2d 557, 559 (citing State v. Keys (1993), 258 Mont. 311, 314, 852 P.2d 621, 623).

We first address the Oregon beating incident. In Cline v. Durden (1990), 246 Mont. 154, 803 P.2d 1077, this Court held that counsel, by inquiring into a Forest Service ranger's report for the first time on cross-examination, opened the door for further inquiry on redirect and effectively overcame his own objection to

matters contained therein. <u>Cline</u>, 803 P.2d at 1081. Likewise, in the present case McQuiston elicited the circumstances surrounding the Oregon beating on Heidi's cross-examination and the matter was only revisited by the State on its redirect examination of Heidi and its direct examination of Jackie. Thus, the District Court did not err in admitting the evidence of the Oregon beating incident.

With respect to the evidence related to McQuiston's restitution requirement, we determine that the testimony was elicited by the State on cross-examination in an effort to impeach McQuiston's prior testimony that he was financially well off. McQuiston brought up his financial status on direct examination. We have held that character evidence may be rebutted through impeachment without <u>Just</u> procedures. <u>See</u> State v. Baker (1991), 249 Mont. 156, 159, 815 P.2d 587, 589. The evidence introduced by the State concerning McQuiston's outstanding restitution payments was properly admitted to impeach his prior testimony.

Finally, we address the adequacy of the District Court's admonition to the jury. The record indicates that prior to accepting the evidence of other acts and prior to jury deliberation, the District Court admonished the jury that the evidence was not being admitted to prove the character of the defendant in order to show he acted in conformity therewith. The court stated that:

> The only purpose of admitting this evidence is to show, one, proof of lack of consent of the victim; two, proof of motive of the Defendant to commit the crimes charged herein; and three, proof of a common scheme or plan to

commit the offenses charged herein; and four, proof of identity of the Defendant. You may not use that evidence for any other purpose.

This Court has previously held that Just does not require an admonition each time prior acts evidence is received. State v. Keefe (1988), 232 Mont. 258, 268, 759 P.2d 128, 134 (citing State v. Tecca (1986), 220 Mont. 168, 174, 714 P.2d 136, 140). We conclude that in this case, the District Court's admonition was given prior to Heidi's description of the many years of sexual abuse and beatings and that the court met the requirement of § 46-16-401(1), MCA, which required it to give cautionary instructions as required during the course of the trial.

In conclusion, we determine that the District Court did not abuse its discretion or otherwise err in admitting evidence of other acts, including the Oregon beating incident and McQuiston's outstanding restitution payments.

### ISSUE 2

Do McQuiston's convictions for sexual intercourse without consent and incest violate double jeopardy protections?

McQuiston argues that the same conduct formed the "factual predicate" for both offenses charged against him since both were based on sexual intercourse between himself and Heidi. Thus, McQuiston claims the District Court should have dismissed the charge of sexual intercourse without consent.

We review conclusions of law to determine whether the district court's interpretation of the law was correct. State v.

9

Christensen (1994), 265 Mont. 374, 374-75, 877 P.2d 468, 469. We have recently stated that the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. State v. Nelson (Mont. 1996), 910 P.2d 247, 250, 53 St. Rep. 50, 51. The Double Jeopardy Clause has been made applicable to the states through the Fourteenth Amendment. Nelson, 910 P.2d at 250 (citing Benton v. Maryland (1969), 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707; State v. Cole (1987), 226 Mont. 377, 744 P.2d 526).

McQuiston argues that his convictions of both sexual intercourse without consent and incest constitute multiple punishments for the same offense. This Court has employed the "same elements" test set forth in Blockburger v. United States (1932), 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306, to determine whether a defendant can be charged and convicted of violating two statutes for the same act or transaction. See State v. Crowder (1991), 248 Mont. 169, 810 P.2d 299; State v. Wolfe (1991), 250 Mont. 400, 821 P.2d 339; State v. Clawson (1989), 239 Mont. 413, 781 P.2d 267; State v. Long (1986), 223 Mont. 502, 726 P.2d 1364. The Blockburger test states:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether

10

each provision requires proof of a fact which the other does not.

Blockburger, 284 U.S. at 304.

The Blockburger test is a test of statutory construction to determine whether the legislature intended the same conduct to be punishable under two criminal provisions. Crowder, 810 P.2d at 305. The Blockburger test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial. Crowder, 810 P.2d at 305 (citing Illinois v. Vitale (1980), 447 U.S. 410, 416, 100 S. Ct. 2260, 2265, 65 L. Ed. 2d 228, 235). If each statute requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding there may be a substantial overlap in the proof offered to establish the crimes. Iannelli v. United States (1975), 420 U.S. 770, 785 n.17, 95 S. Ct. 1284, 1294, 43 L. Ed. 2d 616, 627.

A comparison of the two statutes for which McQuiston was convicted reveals separate and distinct elements for each crime. Sexual intercourse without consent requires proof that a person knowingly has sexual intercourse without consent with a person of the opposite sex. Section 45-5-503, MCA (1987). Incest requires proof that a person knowingly marries, cohabits with, has sexual intercourse or sexual contact with an ancestor, a descendant, a brother or sister, or any stepson or stepdaughter. Section 45-5-507, MCA (1987).

11

Sexual intercourse is prohibited under the incest statute only if the perpetrator and victim are related. Thus, the requirement in the incest statute that the parties be related is an element that is not included in the sexual intercourse without consent statute. Furthermore, to prove incest it is not necessary under the circumstances of this case that sexual intercourse without consent be proven. Sexual contact alone is sufficient.

Lack of consent is an element of sexual intercourse without consent but not, under the circumstances, an element of incest. The incest statute only allows consent to be raised as a defense if the victim is a stepson or stepdaughter eighteen years of age or older. In the present case, Heidi was McQuiston's adopted daughter. Montana considers an adoptive father to be a parent, not a stepparent. See § 40-8-103(9), MCA (1987). Since McQuiston was Heidi's adoptive father, consent was not an issue with the incest charge. The two charges contain distinct elements and each requires proof of facts which the other does not.

In State v. Sor-Lokken (1991), 247 Mont. 343, 805 P.2d 1367, this Court held that the defendant's convictions of both sexual assault and incest did not violate double jeopardy protections. Sor-Lokken, 805 P.2d at 1373. We relied on the fact that the State needed to prove lack of consent for the sexual assault charge, while lack of consent was not an element which required proof for the incest charge. Sor-Lokken, 805 P.2d at 1373. In Sor-Lokken we also distinguished State v. Hall (1986), 224 Mont. 187, 728 P.2d

12

1339, *rev'd on other grounds* (1987), 481 U.S. 400, 107 S. Ct. 1825, 95 L. Ed. 2d 354, by noting that the victim was the defendant's twelve-year-old stepdaughter and therefore lack of consent was not a required element for the sexual assault charge. Sor-Lokken, 805 P.2d at 1373. Thus, McQuiston's reliance on Hall in the present case is misplaced since lack of consent was an element of proof required for his conviction of sexual intercourse without consent due to Heidi's age at the time the incident occurred.

McQuiston goes on to assert that the Blockburger test does not work well in the context of this case. He instead relies on Montana's double jeopardy statute, § 46-11-410, MCA, previously codified at § 46-11-502, MCA (1987). McQuiston claims that § 46-11-410(2)(a), MCA, which provides that a defendant may not be convicted of more than one offense if "one offense is included in the other," when read in conjunction with § 46-1-202(8), MCA, which defines "included offense" provides broader protection than that afforded by the Blockburger test.

McQuiston also relies on § 46-11-410(2)(d), MCA, to argue that a defendant may not be convicted of more than one offense if "the offenses differ only in that one is defined to prohibit a specific instance of the conduct." He claims that the general statute, § 45-5-503, MCA, prohibits sexual intercourse without consent, while the more specific statute, § 45-5-507, MCA, prohibits such conduct with one's daughter.

13

We are not persuaded by McQuiston's interpretation of § 46-11-410, MCA. Incest is not an "included offense" of sexual intercourse without consent, nor, under the facts of this case, is it a "specific instance" of the conduct proscribed by § 45-5-503, MCA. Incest is a distinct and wholly separate offense from sexual intercourse without consent and each offense requires proof of distinct elements that the other does not. We therefore hold that the District Court correctly interpreted the law and did not violate double jeopardy protections when it convicted McQuiston of sexual intercourse without consent and incest.

### ISSUE 3

Did the District Court err in sentencing McQuiston?

On March 13, 1995, the District Court sentenced McQuiston in open court to a term of fifteen years in the state prison, with five years suspended, for the conviction of sexual intercourse without consent, and to a term of fifteen years in the state prison, with five years suspended, for the incest conviction. On March 14, 1995, the court entered its written judgment and sentencing order indicating that it was imposing a sentence of thirty years in prison, with the last five years suspended, for each of the two offenses. The two sentences were ordered to be served consecutively and the court designated McQuiston as a persistent felony offender and a dangerous offender.

On March 31, 1995, the District Court entered an amendment to its judgment stating it had reviewed the transcript of the

14

sentencing hearing and found that its order was inconsistent with the sentence imposed in open court. The court amended the sentence to twenty-two and one-half years in prison, with five years suspended, for each of the two offenses. The court ordered the sentences to run consecutively for a total sentence of forty-five years in prison, with ten years suspended. In its memorandum to the amended judgment, the court stated that:

> The Court mistakenly treated the persistent felony designation as an enhancement tool. That designation apparently does not enhance the sentence, but simply affords the Court the right to impose a sentence in excess of the maximum allowed for the crimes for which a Defendant is convicted. State v. Fitzpatrick, 247 Mont. 206.

> In this Court's view, it[']s all a game of semantics. But in any case this amended sentence conforms with the Court's intent.

McQuiston argues that the District Court's sentence constitutes an *ex post facto* violation of the law because it sentenced him on the incest conviction pursuant to the statute in effect at the time of the sentencing hearing, rather than the statute in effect at the time the offense occurred. Furthermore, McQuiston contends that the District Court erred in designating him a persistent felony offender and in sentencing him without first receiving a sexual offender evaluation.

Section 45-5-507(3), MCA (1987), provides that a person convicted of incest shall be imprisoned for any term not to exceed ten years. This statute was amended in 1991 and the maximum term of imprisonment was increased to twenty years. Section 45-5-507,

15

MCA (1991). The 1987 version of the Code applies to this case since the offenses charged occurred in February 1989.

However, when a defendant has been designated a persistent felony offender, it is § 46-18-502, MCA, that determines the maximum length of the sentence, not the statute governing the underlying offense. We have stated that the persistent felony offender provision "replace[s] the maximum sentence prescribed for the offense. It is not a sentence in addition to the sentence for the offense." State v. Fitzpatrick (1991), 247 Mont. 206, 208, 805 P.2d 584, 586. Section 46-18-502(1), MCA, provides that "a persistent felony offender shall be imprisoned in the state prison for a term of not less than 5 years or more than 100 years."

In the present case, the District Court stated that McQuiston's sentence reflected his status as a persistent felony offender. Thus, the court's sentence of twenty-two and one-half years for the incest conviction was well within the 100-year maximum sentence allowed by the persistent felony offender statute. We therefore conclude the District Court did not err in sentencing McQuiston, nor did it apply the law *ex post facto*.

Section 46-13-108(1), MCA, requires the prosecution to give notice at or before the omnibus hearing of its intent to treat the accused as a persistent felony offender. Section 46-13-108(5), MCA, requires that notice must be filed and sealed until the time of trial or until a plea of guilty is given by the defendant. The purpose for providing such notice is to give the defendant an

opportunity to file an objection to the criminal record relied upon in the notice and to hold a hearing should there be any such objection. See § 46-13-108(3), (4), MCA.

On May 3, 1994, the State served defense counsel with notice that pursuant to §§ 46-18-501 and -502, MCA, it intended to seek increased punishment for McQuiston as a persistent felony offender. McQuiston had been convicted of two prior felonies, one in 1982 and one in 1991. The notice, however, was not filed with the District Court until October 11, 1994, after the trial was concluded. McQuiston argues that timely filing of the notice is a jurisdictional prerequisite and thus, failure to do so constitutes reversible error.

In State v. Madera (1983), 206 Mont. 140, 670 P.2d 552, we interpreted the former version of the statute, § 46-18-503, MCA, which required two notices. First, the State had to give the defense notice of its intent to seek treatment of the accused as a persistent felony offender prior to entry of a guilty plea or before trial. A second notice had to be filed with the court before sentencing. In Madera the defendant had received written notice before trial but claimed the second notice was deficient. The trial court had set the date for the sentencing hearing at the same time it received a motion to designate the defendant a persistent felony offender. In affirming the district court, we stated that the first notice to the defense was jurisdictional while the second notice to the court was simply procedural.

17

Madera, 670 P.2d at 560. We held that the defendant was not prejudiced by the failure to file the second notice prior to setting the date for the sentencing hearing since he had sufficient notice of the charge which would be used against him. Madera, 670 P.2d at 560.

Section 46-20-701(1), MCA, provides that "[n]o cause shall be reversed by reason of any error committed by the trial court . . . unless the record shows that the error was prejudicial." We have held that prejudice will not be presumed, but must appear from a fact established in the record or from the denial or invasion of a substantial right from which the law imputes prejudice. State v. Arlington (1994), 265 Mont. 127, 150, 875 P.2d 307, 321; State v. Newman (1990), 242 Mont. 315, 325, 790 P.2d 971, 977.

In the present case, McQuiston was sent notice of the State's intent to seek persistent felony status over a month prior to the omnibus hearing and five months before trial. Furthermore, the notice was filed with the District Court five months prior to sentencing. We conclude that McQuiston was not prejudiced by the State's failure to file notice of its intent to treat McQuiston as a persistent felony offender prior to trial. Thus, we hold that the District Court did not err in designating McQuiston a persistent felony offender.

Prior to sentencing, the District Court ordered a presentence investigation report and ordered that McQuiston undergo a sex offender evaluation. No sex offender evaluation had been prepared

18

at the time of sentencing. McQuiston alleges that the District Court did not have the discretion to sentence him without considering a completed presentence investigation containing the evaluation and recommendation required by § 46-18-111, MCA.

At the sentencing hearing, McQuiston's probation officer testified that sex offender clinics in Helena and Bozeman had been contacted and had stated that because McQuiston was in denial, an evaluation would be of no benefit. A Missoula doctor indicated he would be available for an evaluation but, according to the probation officer, McQuiston was unavailable due to his incarceration as a result of the revocation of a previous probationary sentence.

> Section 46-18-111, MCA (1987), provides that:
>
> No defendant convicted of an offense under 45-5-502 through 45-5-505, 45-5-507, or 45-5-625 against a victim who was less than 16 years old when the offense was committed may be sentenced or otherwise disposed of before a written report of investigation by a probation officer is presented to and considered by the court. The investigation must include an evaluation of the defendant and a recommendation as to treatment by a person qualified by professional experience.

Heidi was nineteen years old when the offenses were committed. Thus, the sex offender evaluation was not mandatory. Even though the District Court ordered that such an evaluation be conducted, the court stated at the sentencing hearing that:

> I don't think I'm going to require him to participate in it. He's got enough facing him as it is. And if he's still in denial, it won't do any good anyway.

19

We have stated that this Court will not disturb a district court's sentencing decision absent a showing that the court abused its discretion. State v. Blanchard (1995), 270 Mont. 11, 15, 889 P.2d 1180, 1182. The record is clear that McQuiston denied the crimes for which he was convicted, and therefore, sex offender treatment would be ineffective. Under those circumstances, we conclude that the District Court did not abuse its discretion in sentencing McQuiston without considering a sex offender evaluation.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

20